FILED

August 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0441

DA 14-0441

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 250

IN THE MATTER OF THE GUARDIANSHIP
AND CONSERVATORSHIP OF:

A.M.M.,

     An Incapacitated Person.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DG-14-2, DG-14-3
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

    For Appellant T.M.M.:

        Genet McCann, Avalon Law, LLC; Big Sky, Montana

    For Appellee and Co-conservators:

        Douglas J. Wold, Wold Law Firm, P.C.; Polson, Montana

    For Appellee P.J.M. Jr., S.M.M. and W.P.M.:

        Robert J. Long, Long Law Office; Polson, Montana

    For Appellee Guardian:

        Casey Emerson, Clinton J. Fischer Law Office; Polson, Montana

Submitted on Briefs:  April 1, 2015
Decided:  August 24, 2015

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Timothy McCann appeals numerous orders and judgments of the Twentieth Judicial District Court, Lake County, in the guardianship and conservatorship proceedings for Timothy's mother, A.M.M. We affirm.

¶2 We restate the issues on appeal as follows:

1. *Whether the District Court abused its discretion by denying Timothy's motion to vacate the District Court's March 14, 2014 Findings of Fact, Conclusions of Law, and Judgment.*

2. *Whether the District Court erred by striking Timothy's reply brief.*

3. *Whether the District Court abused its discretion by limiting the powers of the joint conservators and not allowing them to act in A.M.M.'s elected corporate roles.*

4. *Whether the District Court abused its discretion by awarding attorney fees to Wold.*

5. *Whether the District Court abused its discretion by ordering Timothy to personally pay attorney fees to Emerson as part of a Rule 11 sanction.*

6. *Whether Timothy can allege violations of the Montana Rules of Professional Conduct in this appeal.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 A.M.M. was born in 1922 and is the mother of eight adult children: William, Thomas, Paul Jr., Miriam, Genet, Timothy, Kathleen, and Sheila. A.M.M.'s husband and the father of her children, Paul Sr., passed away in June 2013. Paul Sr.'s estate includes considerable assets and ownership interests in several corporations. The estate is currently being probated in Lake County.

2

¶4 On January 13, 2014, Timothy filed a petition for temporary and permanent guardianship and conservatorship of A.M.M. His petition explained that he had cared for both A.M.M. and his late father starting in 2007 when his parents moved to Polson. Timothy's petition requested that he be appointed A.M.M.'s sole guardian and conservator. Timothy filed an affidavit from A.M.M., dated January 14, 2014, which stated that A.M.M. wished for Timothy "to take care of me & manage my affairs and my finances." On January 13, 2014, Paul Jr., Sheila, and William also filed a petition for determination of incapacity and request for appointment of temporary guardians and conservators. The second petition specifically noted that A.M.M. suffers from Alzheimer's type dementia. The petition included a psychological evaluation dated December 13, 2013, which concluded that "if left alone, [A.M.M.] would not be able to function independently," and that she "should be closely monitored and supervised." The evaluating psychologist also concluded that A.M.M. did not have the capacity to understand the process of probating her late husband's estate "to the extent necessary for making decisions in her best interest."

¶5 The District Court consolidated the two petitions and on January 15, 2014, issued a temporary order, and appointed the Office of the State Public Defender (OPD) to represent A.M.M. "unless she hires private counsel of her own choice." Ronn Larsen, an Adult Protection Specialist with the Department of Public Health and Human Services, was appointed temporary guardian and conservator of A.M.M. for six months or until further court order. On February 6, 2014, the District Court appointed attorney Casey

Emerson as visitor or friend of A.M.M., and attorney Steven Eschenbacher of OPD to serve as A.M.M.'s attorney until trial.

¶6 A hearing to determine the need for guardians and conservators of A.M.M. was initially scheduled for February 19, 2014. On February 13, 2014, Paul Jr., Sheila, and William filed for a continuance, stating that A.M.M.'s children and relatives needed additional time to travel to Polson for the hearing. The District Court reset the hearing for March 5, 2014. On March 3, 2014, Timothy filed a notice of removal of his two attorneys with the District Court. On March 5, 2014, Paul Jr., Sheila, and William filed an objection to any possible continuance that Timothy may seek due to his removal of his attorneys. Trial on the issue of A.M.M.'s incapacity was held, as scheduled, on March 5-6, 2014.

¶7 On March 14, 2014, the District Court issued detailed Findings of Fact, Conclusions of Law, and Judgment which found that A.M.M. is an incapacitated person as defined by § 72-5-101(1), MCA. The District Court found that A.M.M. had been incapacitated since at least December 2013, when the psychological evaluation was performed, and found that A.M.M. "lacked capacity to enter into legally-enforceable contracts since at least December 13, 2013." The court appointed Polson attorney Casey Emerson as guardian and appointed Paul Jr., Timothy, and Polson attorney Douglas J. Wold as joint conservators. The court ordered that any actions taken as conservators required a majority vote.

¶8 On April 11, 2014, Timothy, acting pro se, filed a motion to vacate the court's March 14, 2014 order and grant a new trial, arguing among other claims that A.M.M.'s

4

due-process rights were violated, that various temporary and permanent appointments were void, and that the District Court failed to follow the statutory procedures for guardianship and conservatorship proceedings. After being granted an extension, Wold answered Timothy's motion on May 2, 2014, on behalf of himself, joint conservator Paul Jr., and guardian Emerson. Timothy filed a reply brief with the District Court on May 19, 2014. Timothy did not serve his reply brief until May 21, 2014, however, and the District Court issued an order striking Timothy's reply for untimely service. On June 9, 2014, the District Court denied Timothy's motion to vacate the March 14, 2014 order on A.M.M.'s incapacity.

¶9     On June 12, 2014, Wold petitioned the District Court for a declaratory judgment on the joint conservator's authority to act on behalf of A.M.M. in her roles as a director and signatory of several corporations. The District Court ordered that the joint conservators of A.M.M.'s estate "are not legally entitled to act in her place as a director of any corporation in which" A.M.M served as an elected and acting member of the board of directors, and "are not legally entitled to act in her place as a signatory for any corporation."

¶10     On June 12, 2014, Wold filed a petition for attorney fees with the District Court, stating that Timothy refused to pay Wold's bills. The March 14, 2014 order stated that "Casey Emerson and Douglas J. Wold shall be compensated at their usual hourly rates, as [A.M.M.]'s assets are sufficient therefor." Wold filed a second petition for attorney fees on June 20, 2014, and a third petition for attorney fees on July 8, 2014.

5

¶11 On July 9 and 11, 2014, the District Court held a hearing on Wold's first petition for attorney fees. The District Court granted Wold's petition for attorney fees to be paid by the conservators, and granted Wold's motion for Rule 11 sanctions against Timothy. The order required Timothy to personally pay Wold's attorney fees incurred for the hearing preparation. The order found that Timothy breached his fiduciary duty as A.M.M.'s conservator by bringing an "unnecessary proceeding" challenging Wold's fees, and required Timothy to personally pay guardian Emerson's attorney fees for her work preparing for the July hearing. The court also modified the March 14, 2014 order to allow one conservator, either Paul Jr. or Timothy, to approve any future bill from Wold. Emerson filed a statement for charges incurred, and the District Court awarded attorney fees to Emerson for her work preparing for the July 9 and 11, 2014 hearing.

¶12 The District Court held a second hearing on attorney fees on August 29, 2014, on Wold's second and third petitions for fees. Timothy did not appear at the hearing. Instead, he merely filed a "Notice of Objection to the Hearing" with the District Court shortly before the hearing and then left the courthouse. The District Court granted Wold's second and third petitions, to be paid by the conservators. The District Court again ordered Timothy to personally pay both Wold and Emerson the reasonable costs for their preparation for the August 29, 2014 hearing as a Rule 11 sanction.

¶13 Timothy appeals the March 14, 2014 Findings of Fact, Conclusions of Law, and Judgment declaring A.M.M. incapacitated, the June 9, 2014 denial of his motion to vacate, and other District Court orders discussed in turn below.

6

**STANDARDS OF REVIEW**

¶14    "We review a district court's findings of fact to determine whether those findings are clearly erroneous." *In re J.R.*, 2011 MT 62, ¶ 17, 360 Mont. 30, 252 P.3d 163. "A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or, if after reviewing the record, this Court is left with a firm conviction that a mistake has been made." *Redies v. Cosner*, 2002 MT 86, ¶ 11, 309 Mont. 315, 48 P.3d 697. "We review a district court's conclusions of law to determine whether that court's interpretation of the law is correct." *In re J.R.*, ¶ 17.

¶15    We review a district court's denial of a motion for a new trial made pursuant to M. R. Civ. P. 59 on the grounds enumerated in § 25-11-102, MCA, for an abuse of discretion. *Lopez v. Josephson*, 2001 MT 133, ¶ 16, 305 Mont. 446, 30 P.3d 326. The decision to grant or deny a new trial will not be disturbed absent a showing of manifest abuse of that discretion. *Lopez*, ¶ 16. The abuse of discretion must be so significant as to materially affect the substantial rights of the complaining party. *Lopez*, ¶ 16.

¶16    Subject to statutory restrictions, the selection of the person to be appointed guardian is committed largely to the discretion of the trial court, and this Court will only interfere with such an appointment in the case of a clear abuse of discretion. *In re Guardianship of Nelson*, 204 Mont. 90, 94, 663 P.2d 316, 318 (1983). The choice of a conservator is also subject to statutory restrictions, and reviewed by this Court for an abuse of discretion. *See In re J.A.L.*, 2014 MT 196, ¶ 11, 376 Mont. 18, 329 P.3d 1273

7

(reviewing the district court's choice of a guardian/conservator for an abuse of discretion).

¶17 Under our conservatorship statutes, "trial courts and conservators are granted broad discretionary powers" in estate administration. *Redies*, ¶ 20. "The standard of review for discretionary trial court rulings is abuse of discretion." *In re Johnson*, 2011 MT 255, ¶ 12, 362 Mont. 236, 262 P.3d 1105.

¶18 We review a district court's grant or denial of attorney fees for an abuse of discretion. *In re J.R.*, ¶ 77. "A district court has abused its discretion if its award of attorney fees is not supported by substantial evidence." *In re Marriage of Harkin*, 2000 MT 105, ¶ 70, 299 Mont. 298, 999 P.2d 969.

## DISCUSSION

¶19 *1. Whether the District Court abused its discretion by denying Timothy's motion to vacate the Court's March 14, 2014 Findings of Fact, Conclusions of Law, and Judgment.*

¶20 Timothy argues that the District Court erred by denying his motion to vacate the court's March 14, 2014 Findings of Fact, Conclusions of Law, and Judgment. In the context of this motion, Timothy requested a new trial pursuant to M. R. Civ. P. 59, § 25-11-102, MCA, and M. R. Civ. P. 60. "The court may, on motion, grant a new trial on all or some of the issues . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in Montana state court." M. R. Civ. P. 59(1). In cases tried without a jury, § 25-11-103, MCA, provides: "No new trial may be granted in cases tried by the court without a jury, except on the grounds mentioned in subsections (1), (3), and (4) of 25-11-102." The grounds for relief from a

final judgment in M. R. Civ. P. 60(b) overlap with M. R. Civ. P. 59 and § 25-11-102, MCA. Timothy's requested relief was a new trial; therefore, the analysis is limited to whether Timothy could establish:

> (1) irregularity in the proceedings of the court . . . or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;
>
> . . .
>
> (3) accident or surprise that ordinary prudence could not have guarded against;
>
> (4) newly discovered evidence material for the party making the application that the party could not, with reasonable diligence, have discovered and produced at the trial;

Section 25-11-102(1), (3), (4), MCA; *Adams v. Dep't of Highways*, 230 Mont. 393, 398, 753 P.2d 846, 849 (1988).

¶21 On appeal, Timothy alleges irregularities of the trial court proceedings and multiple abuses of discretion by the District Court; each is discussed in turn below.

*a. Timothy's challenge to temporary appointments made by the District Court.*

¶22 Timothy's motion to vacate included challenges to the temporary appointments made by the District Court on January 15, 2014, and February 6, 2014, including the appointment of Ronn Larsen as temporary guardian and conservator. On appeal, Timothy also challenges the temporary appointment of Emerson as visitor. Timothy's challenges to the temporary appointments are untimely. We have held that the rule on appealable civil orders, M. R. App. P. 6(4)(a), "does not differentiate between a permanent guardianship and a temporary guardianship. Thus, a district court order

9

granting either a permanent or a temporary guardianship is appealable." *In re Klos*, 284 Mont. 197, 201, 943 P.2d 1277, 1279 (1997). The orders making the temporary appointments were entered on January 15, 2014, and February 6, 2014. M. R. App. P. 4(5)(a)(i) requires that Timothy file a notice of appeal of these orders within 30 days for consideration by this Court.

¶23 Because Timothy's appeal as to this issue is untimely, we decline to address it. We note, however, that the temporary appointments were superseded by the permanent order of guardianship and conservatorship made on March 14, 2014.

*b. Timothy's allegations that A.M.M. was denied due process in the guardianship and conservatorship proceedings.*

¶24 Timothy argues that A.M.M.'s constitutional and statutory due-process rights were violated. He alleges that A.M.M. had a right to private counsel, challenges the appointment of OPD, alleges ineffective assistance of counsel by the OPD attorney, and Timothy alleges various violations of the guardianship and conservatorship statutes.

¶25 The District Court held that Timothy does not have standing to assert the rights of his mother, and Timothy is not an attorney who can represent her in court. The District Court further noted that A.M.M. was represented by counsel at all phases of the proceedings.

¶26 On appeal, Timothy argues that he has standing to raise due-process claims on behalf of A.M.M. and that he suffered injury to his reputation as "the loyal and faithful son of A.M.M." Timothy further asserts that, as a child of A.M.M., he is an interested

person pursuant to § 72-1-103(25), MCA, and is entitled to participate in these proceedings.

¶27 "The question of standing is whether a litigant is entitled to have the court determine the merits of a particular dispute." *Mont. Trout Unlimited v. Beaverhead Water Co.*, 2011 MT 151, ¶ 27, 361 Mont. 77, 255 P.3d 179. "Standing resolves the issue of whether the litigant is a proper party to seek adjudication of a particular issue, not whether the issue is justiciable." *Mont. Trout Unlimited*, ¶ 27. To establish standing, the complaining party must clearly allege past, present, or threatened injury to a property or civil right, and the alleged injury must be distinguishable from the injury to the public generally, but it need not be exclusive to the complaining party. *Mont. Trout Unlimited*, ¶ 27.

¶28 The District Court ruled that Timothy does not have standing to allege violations of A.M.M.'s due-process rights. We agree. Timothy's assertion that his reputation was damaged is an allegation of personal injury to himself, and this unsupported assertion does not give him standing to assert the personal rights of his mother, A.M.M. While Timothy is correct that he is an interested person under § 72-1-103(25), MCA, this position does not allow him to assert A.M.M.'s constitutional due-process rights.

¶29 The District Court noted that A.M.M. was represented by counsel throughout the proceeding. The District Court was within its discretion to appoint OPD "in the interest of justice" to represent an allegedly incapacitated person in a guardianship proceeding. Section 72-5-315(2), MCA.

11

*c. Whether the District erred by not enforcing the notice requirements of § 37-61-405, MCA, and Unif. Dist. Court R. 10 because Timothy removed his counsel two days before trial.*

¶30 Timothy's counsel filed a "Notice of Removal of Attorneys" on March 3, 2014, two days before trial, in which his attorneys stated that they "have been removed from this case." Timothy argued below and on appeal that the District Court lacked jurisdiction to hear the case because his right to a fundamentally fair trial was violated when opposing counsel failed to follow the notice procedures for removal of counsel under Unif. Dist. Court R. 10 and § 37-61-405, MCA. The District Court held that the notice requirements of Unif. Dist. Court R. 10 and § 37-61-405, MCA, were inapplicable because Timothy removed his counsel himself. The District Court also noted that Timothy was not entitled to a third continuance of the trial because Timothy removed his own counsel.

¶31 When an attorney in an action "is removed, withdraws or ceases to act," the opposing party must notify the unrepresented party of the following: (1) he/she must appoint another attorney or appear in person, (2) the date of the next trial or hearing in the case, and (3) a statement that failure to act within 21 days may result in a judgment being entered against him/her. Unif. Dist. Court R. 10(a)-(b). This notice fulfills the requirements of § 37-61-405, MCA, which applies if an attorney dies, is removed, is suspended, or ceases to act. Unif. Dist. Court R. 10(e).

¶32 Timothy argues that, upon removal of his attorneys, opposing counsel was required to give him notice under Unif. Dist. Court R. 10(b), and he was entitled to 21 days to find another attorney before trial. Timothy cites *Quantum Elec. v. Schaeffer*,

12

2003 MT 29, 314 Mont. 193, 64 P.3d 1026 in support of his assertion. In *Quantum*, the attorney asked the District Court for leave to withdraw because "he had been unable to secure the cooperation of his clients in proceeding with the case." *Quantum*, ¶ 4. The District Court granted the attorney's motion to withdraw and mailed a copy of the order to the attorney's former client. *Quantum*, ¶ 5. We held that the court's order was insufficient notice to the unrepresented party under Unif. Dist. Court R. 10 and § 37-61-405, MCA. *Quantum*, ¶ 31.

¶33 Here, the District Court held that *In re Marriage of Hardin*, 2008 MT 154, 343 Mont. 254, 184 P.3d 1012, controls. In *Hardin*, the petitioner discharged his attorney two weeks before trial, and the District Court denied petitioner's motion to delay the trial. *Hardin*, ¶ 5. We distinguished *Quantum*, first noting that the notice of the next proceeding was irrelevant when Hardin "was literally standing in the middle of it." *Hardin*, ¶ 17. We further noted that Hardin intentionally removed his counsel, and "allowing [Hardin] to delay the proceedings . . . would essentially place control over the progress of the proceeding into the hands of [Hardin], rather than the District Court." *Hardin*, ¶ 18. In fact, the *Quantum* court acknowledged a common dynamic where an "unrepresented party is characterized as obstructionist and seeking to defeat the judicial process by virtue of simply ignoring its existence." *Quantum*, ¶ 24. We noted in *Hardin* that "[t]he policy behind the notice requirement of § 37-61-405, MCA, is clearly to ensure that a party, abandoned by counsel in the midst of litigation, is not left hanging 'out to dry.'" *Hardin*, ¶ 18. We agree with the District Court that Timothy was not left "out to dry."

13

¶34 Here, like in *Hardin*, Timothy removed his counsel himself just before trial. The District Court did not err when it held that the opposing party was not bound to the notice requirements of Unif. Dist. Court R. 10 and § 37-61-405, MCA. The District Court also did not abuse its discretion by denying Timothy's request for a third continuance.

> *d. Whether the District Court abused its discretion by appointing Emerson as visitor and then permanent guardian of A.M.M.*

¶35 Timothy argues that the District Court erred by appointing Emerson as visitor and that it was error to appoint her as permanent guardian of A.M.M.

¶36 A district court shall appoint a visitor in a guardianship proceeding, § 72-3-315, MCA, and it must be a person who is trained either in law, or another profession identified in the statute, and the person must have no personal interest in the proceedings under § 72-5-313, MCA. A visitor shall interview the petitioners in a guardianship proceeding, interview any person nominated to be guardian, and "visit the present place of abode of the person alleged to be incapacitated and the place it is proposed that the person will be detained or reside," and submit a report to the court. Section 72-5-315(3), MCA.

¶37 Emerson, a Polson attorney who is unrelated to A.M.M., was appointed visitor on February 6, 2014. Emerson filed a detailed and thoughtful report of her home visit to A.M.M. Emerson talked to the petitioners in A.M.M.'s incapacity proceedings, including Timothy and Paul Jr., and she inquired into A.M.M.'s family, health, current living situation, and ability to care for herself, fully meeting the requirements of § 72-5-315, MCA. Emerson concluded that A.M.M. does not have the capacity to manage her own

14

medical and financial affairs and that the court should appoint both a guardian and a conservator of A.M.M.

¶38 Timothy fails to cite any facts to prove that Emerson is unqualified to be a visitor. Furthermore, the time to make any challenge to Emerson's appointment as visitor under § 72-5-313, MCA, has passed. This temporary and limited appointment was made on February 6, 2014, meaning Timothy had 30 days to appeal this order under M. R. App. P. 4(5)(a)(i). *See In re Klos*, 284 Mont. at 201, 943 P.2d at 1279 (holding that temporary appointments in guardianship proceedings are immediately appealable).

¶39 Timothy notes that a visitor must interview any person nominated to be guardian under § 72-5-315, MCA, and therefore he argues that it was error for the District Court to appoint Emerson guardian because Emerson did not interview herself. This argument has no merit. The District Court was well within its discretion to appoint Emerson visitor and later appoint her permanent guardian of A.M.M.

¶40 Timothy also claims that the District Court failed to find that guardianship was "necessary," citing § 72-5-316(1), MCA (a guardian can be appointed if it "is necessary to meet essential requirements for the person's physical health or safety"). The District Court conducted a thorough review of this matter, after which it issued a thorough and thoughtful order, clearly substantiating its decisions. We will not exalt form over substance in such a circumstance by reversing that order because of the absence of the word "necessary."

¶41 Although an adult child is specifically named as having priority to be named guardian of an incapacitated person under § 72-5-312(2)(c), MCA, these priorities "are

15

not binding, and the court shall select the person . . . that is best qualified and willing to serve," § 72-5-312(3), MCA. The District Court found that Emerson is qualified, and it was in the best interest of A.M.M. for Emerson to serve as her guardian.

¶42 Finally, under § 72-5-312(2)(a), MCA, a person has priority to be appointed guardian "if the court specifically finds that at the time of the nomination the incapacitated person had the capacity to make a reasonably intelligent choice." The District Court determined that A.M.M. was incapacitated as of December 13, 2013, the date of her psychological evaluation. Therefore, the January 14, 2014 affidavit of A.M.M., expressing a desire to have Timothy control her assets and medical care, was correctly rejected by the District Court.

> *e. Whether the District Court abused its discretion by appointing three joint conservators, including a conservator without statutory priority.*

¶43 Timothy argues that the District Court abused its discretion by appointing three joint conservators, Timothy, Paul Jr., and Wold.

¶44 Section 72-5-409(2)(b), MCA, requires that a conservator must be appointed for an incapacitated person if there is "a showing that the 'person has property which will be wasted or dissipated' unless 'proper management' is provided." *In re Guardianship & Conservatorship of Swandal*, 210 Mont. 167, 171–72, 681 P.2d 701, 703 (1984). Here, the District Court specifically found that A.M.M. "is unable to manage her property and affairs effectively for reasons of cognitive impairment and advanced age, and that she has property that may be wasted or dissipated" without the appointment of a conservator.

16

¶45 An adult child of an incapacitated person has statutory priority to be appointed conservator under § 72-5-410(1)(d), MCA. Therefore, both Timothy and Paul Jr. had equal priority to be appointed conservators of their mother's estate. Timothy argues that he has higher priority than Paul Jr. because he had support of five of the eight siblings; however, the statute does not contemplate such a ranking system based on support from other potential conservators. The statute contemplates those "having equal priority" and also states that "[t]he court, for good cause, may pass over a person having priority and appoint a person having less priority or no priority." Section 72-5-410(3), MCA.

¶46 Timothy asserted below and again on appeal that he was personally nominated by A.M.M. For a court to consider a person nominated as a conservator by the protected person, the protected person must have "sufficient mental capacity to make an intelligent choice." Section 72-5-410(1)(b), MCA. The District Court considered A.M.M. to be incapacitated as of at least December 13, 2013, the date of the psychological evaluation. The documents on which Timothy relies to demonstrate his nomination by A.M.M. include a durable power of attorney dated December 31, 2013, and an affidavit of A.M.M. dated January 14, 2014. We note again that the District Court correctly rejected these documents as evidence of A.M.M.'s wishes because A.M.M. lacked the capacity to contract and nominate her own conservator by that time.

¶47 In this case, the District Court appointed two individuals with equal statutory priority—Timothy and Paul Jr.—and demonstrated ample good cause to include attorney Wold as a joint conservator. The District Court cited several examples of distrust between the siblings, which included divided support for potential conservators. Because

17

of the distrust, the District Court determined that it was in the best interest of A.M.M. to divide the duties of guardian and conservatorship. The District Court considered Timothy's current familiarity with A.M.M.'s financial situation, Paul Jr.'s business experience, and that they both live close to A.M.M. All the petitioners agreed that Wold was capable and had the ability to serve as a conservator. The District Court concluded that it was in A.M.M.'s best interest to appoint three joint conservators, and that any financial decisions required a majority vote of the joint conservators.

¶48 The distrust among the siblings, and the complexity of the estate at issue, provided good cause to appoint three joint conservators, including a joint conservator without statutory priority under § 72-5-410(3), MCA. The District Court did not abuse its discretion by appointing three joint conservators to oversee the estate of A.M.M.

¶49 After reviewing the issues presented above, we conclude that Timothy fails to demonstrate any procedural irregularities or abuses of discretion which justify the granting of a new trial. The District Court did not abuse its discretion by denying Timothy's motion to vacate.

¶50 *2. Whether the District Court erred by striking Timothy's reply brief.*

¶51 Timothy filed his motion to vacate on April 11, 2014. After requesting an extension of time, Wold filed an answer on May 2, 2014. Timothy had 14 days to file and serve his reply brief under Mont. Unif. Dist. Court R. 2(a), plus three additional days under M. R. Civ. P. 6(d) because he mailed his reply brief to complete service. Therefore, Timothy's reply brief had to be filed and served by May 19, 2014.

¶52 Timothy filed his reply brief on May 19, 2014, and the Certificate of Service attached to the reply brief as per M. R. Civ. P. 5(d)(1) stated that Timothy served his reply brief on Wold on May 19, 2014. Wold moved to strike the reply brief because the postmark on the reply brief was dated May 21, 2014, two days after the May 19, 2014 deadline for service. The District Court determined Timothy did not timely serve his reply brief as required by Mont. Unif. Dist. Court R. 2(a) and M. R. Civ. P. 6(d) because the reply brief was not served on or before the May 19, 2014 deadline. There was certainly a basis for this decision, and the District Court did not abuse its discretion by striking the reply brief for untimely service.

¶53 *3. Whether the District Court abused its discretion by limiting the powers of the joint conservators and not allowing them to act in A.M.M.'s elected corporate roles.*

¶54 At the time that A.M.M. was declared incapacitated, A.M.M., Paul Sr. (her late husband), and Timothy were the only members of the boards of directors for three Montana corporations: DDI, TSI, and Consulting Associates, Inc. A.M.M. and Paul Sr. were the only signatories on the corporate checking accounts for DDI, TSI, and Consulting Associates, Inc. The family has ownership interests in several other corporations, and other siblings hold positions on the boards of directors. The three joint conservators, Timothy, Paul Jr., and Wold could not agree on the extent of their authority as conservators regarding A.M.M.'s position as director of various corporations or her signatory designation.

¶55 On June 12, 2014, Wold petitioned the District Court for a declaratory judgment on the joint conservators' authority to act on behalf of A.M.M. in her role as a director in

several of the corporations. Wold specifically petitioned for a finding that the joint conservators cannot act on behalf of A.M.M. in her elected positions, explaining that neither he nor Paul Jr. were ever elected by the corporations' shareholders to act on the boards of directors of any of the corporations, nor were they designated as signatories by the boards of directors.

¶56 Timothy opposed Wold's petition for a declaratory judgment regarding the joint conservators' authority to act on behalf of A.M.M. in her roles as a director and signatory of the corporations. Timothy argued that the conservators' inability to pay corporate expenses would result in waste of corporate assets. In particular, Timothy noted that the corporations had been unable to pay employees' wages in a timely manner, resulting in complaints to the Montana Department of Labor and penalties levied against the corporations.

¶57 Wold responded that conservators can sign checks to spend the personal funds of the protected person, but that power does not extend to spending the money of others—in this case, corporate funds. Wold suggested as a solution that A.M.M. make a loan to the corporations from her personal accounts to continue business operations, including paying wages, but Timothy did not agree to this course of action. In late March 2014, Timothy held himself out as a signatory for the corporations. Timothy presented checks from the corporations and stated that they needed to be signed. When Wold discovered that Timothy was not a signatory, Wold suggested that the boards of directors of each corporation meet to designate new signatories. However, Wold's suggestions were met with continual opposition from Timothy. Timothy refused to hold corporate meetings to

designate new signatories for those corporations for which he was now the only competent director. Timothy also challenged the existence of other corporations, and he has challenged A.M.M.'s ownership interest in several corporations.

¶58 On August 11, 2014, the District Court granted Wold's petition and ordered as follows:

1. The Co-conservators of [A.M.M.], an incapacitated person, are not legally entitled to act in her place as a director of any corporation in which [A.M.M.] was an elected and acting member of the corporation's board of directors from and after December 13, 2013.

2. The Co-conservators of [A.M.M.], an incapacitated person, are not legally entitled to act in her place as a signatory for any corporation for which [A.M.M.] was a designated signatory on the respective corporation's bank account or accounts.

¶59 On appeal, Timothy argues that that the District Court erred by not allowing the joint conservators to act in A.M.M.'s elected corporate roles. Timothy relies upon § 72-5-427(3)(c), MCA, which states in pertinent part: "A conservator, acting reasonably in efforts to accomplish the purpose for which the conservator was appointed, may act without court authorization or confirmation to . . . continue or participate in the operation of any business or other enterprise." Timothy notes that a conservator has many powers in estate administration, including the ability to execute instruments for the fulfillment of a conservator's duties under § 72-5-427(3)(y), MCA.

¶60 Timothy further noted that the District Court is vested with "all the powers over [A.M.M.'s] estate and affairs that [she] could exercise if present and not under disability, except the power to make a will," citing § 72-5-421(3), MCA. We note that "the court *may* confer on a conservator at the time of appointment or later . . . any power that the

21

court itself could exercise under 72-5-421(2) and (3)." Section 72-5-430(1), MCA (emphasis added). Timothy makes other arguments to support his position, but they were not properly preserved for appeal. We generally do not address issues raised for the first time on appeal. *State v. Longfellow*, 2008 MT 343, ¶ 19, 346 Mont. 286, 194 P.3d 694.

¶61 Timothy acknowledges that a district court may limit the powers of a conservator. Once a petition for conservatorship is made, the district court has "exclusive jurisdiction to determine how the estate of the protected person that is subject to the laws of this state is managed, expended, or distributed to or for the use of the protected person or any of the person's dependents." Section 72-5-405(2), MCA. "The court may, at the time of appointment or later, limit the powers of a conservator conferred by the court . . . . If the court limits any power conferred on the conservator by 72-5-427, 72-5-428, or 72-5-429, the limitation must be endorsed upon the conservator's letters of appointment." Section 72-5-430(2), MCA.

¶62 "District courts are vested with broad management powers over a conservatorship, possessing 'all the powers over [the person's] estate and affairs which he could exercise if present and not under disability, except the power to make a will.' Section 72-5-421(3), MCA." *In re Guardianship & Conservatorship of Anderson*, 2009 MT 344, ¶ 16, 353 Mont. 139, 218 P.3d 1220. The plain language of § 72-5-430(2), MCA, allowed the District Court to limit the power of the conservators. It was not an abuse of discretion for the District Court to declare that the conservators could not act in A.M.M.'s elected corporate role as director of any corporation or in her designated role as a signatory for any corporation. If Timothy intended to "continue or participate in the operation of any

22

business or other enterprise," § 72-5-427(3)(c), MCA, the logical, if not required, step was to follow Wold's advice for appointment of new signatories for the corporations.

¶63    *4. Whether the District Court abused its discretion by awarding attorney fees to Wold.*

¶64    Timothy argues that Wold's attorney fees were not warranted because Wold was not hired as an attorney, but rather was appointed as a joint conservator. However, when a court appoints a conservator with special skills, the court intends for the conservator to use those special skills in administration of the estate. *See In re J.R.*, 2011 MT 62, ¶ 23, 360 Mont. 30, 252 P.3d 163 ("Clearly the court believed that [the conservator, an experienced CPA,] had special skills that the court expected him to use in his fiduciary capacity as conservator of J.R.'s estate."). In this case, the District Court specifically stated that "Douglas J. Wold, Polson attorney, has the integrity and ability to serve as Conservator. The Court takes judicial notice that Mr. Wold is one of the few people in this area that has the ability to timely comprehend and act in such a complex case."

¶65    Our statutes expressly allow conservators to hire attorneys to assist them in estate administration, including defense or prosecution of actions to protect the estate. Section 72-5-427(3)(w), (x), MCA. Conservatorship proceedings contain specific statutory provisions governing the award of attorney fees and costs. *In re J.R.*, ¶ 77. "If not otherwise compensated for services rendered, any visitor, lawyer, physician, conservator, or special conservator appointed in a protective proceeding is entitled to reasonable compensation from the estate." Section 72-5-432, MCA.

¶66 It logically follows that an attorney specifically appointed as a conservator, rather than one hired by a conservator, is entitled to reasonable fees for legal work done in administration and/or protection of the estate. The District Court's March 14, 2014 order stated that "Casey Emerson and Douglas J. Wold shall be compensated at their usual hourly rates, as [A.M.M.]'s assets are sufficient therefor."

¶67 In the District Court and on appeal, Timothy makes unsupported contentions that Wold's fees are inaccurate, unnecessary, and excessive. The District Court conducted a hearing to determine the reasonableness of Wold's attorney fees, at which Wold presented detailed testimony of his work on the estate. In the July 24, 2014 order, the Court considered the factors to determine the reasonableness of attorney fees articulated in *Swenson v. Janke*, 274 Mont. 354, 361, 908 P.2d 678, 682–83 (1995):

> (1) [T]he amount and character of the services rendered; (2) the labor, time, and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the result secured by the services of the attorneys.

¶68 Applying the factors above, the District Court determined that Wold's fees were reasonable given Wold's experience, the complexity of the estate, and the "need to overcome obstruction and criticism every step of the way" from Timothy. The only exception to the reasonableness of Wold's fees noted by the District Court was a $1.25 package of Tums charged to Wold's hotel room while on an estate-related trip to Billings. Notwithstanding that Wold did not object to the disallowance of the Tums purchase, the District Court noted, "Based on the testimony about the difficulty in dealing with

24

Timothy McCann, even the Tums charge may have been case-related." The District Court's hearing on August 29, 2014, on the second and third petitions for attorney fees came to the same conclusion as the first, and the court awarded Wold his attorney fees.

¶69 The District Court was within its discretion to order payment of Wold's reasonable attorney fees for the administration and protection of this complex, multi-million-dollar estate.

¶70 *5. Whether the District Court abused its discretion by ordering Timothy to personally pay attorney fees to Emerson as part of a Rule 11 sanction.*

¶71 Timothy argues that Emerson's attorney fees were not warranted for her work as A.M.M.'s guardian. The District Court ordered Timothy to personally pay Emerson her fees for her preparation for the hearings on Wold's attorney fees on July 9 and 11, 2014, and August 29, 2014. Among other unsupported challenges to the District Court's order, Timothy asserts that it would be a waste for the estate to pay such fees.

¶72 Timothy fails to acknowledge that he was ordered to personally pay Emerson's reasonable fees for hearing preparation because of his breach of his fiduciary duty as a conservator of a protected person, and as part of a sanction under M. R. Civ. P. 11(b). The District Court held that all of Timothy's filings contesting Wold's petitions for fees were without merit and "to harass, cause unnecessary delay, and needlessly increase the cost of litigation," citing M. R. Civ. P. 11(b).

¶73 Under Rule 11, when an attorney—or a pro se litigant—signs a pleading and submits it to the court, the person certifies that he or she has made an inquiry reasonable under the circumstances that the claims are supported by existing law (or contain a

good-faith argument to change existing law), the facts have evidentiary support, and the pleading is not filed for an improper purpose. M. R. Civ. P. 11(a)-(b). We review a district court's determination that the pleading, motion or other paper violates Rule 11 de novo. We review the district court's findings of fact underlying that conclusion to determine whether such findings are clearly erroneous. If the district court determines that Rule 11 was violated, then we review the district court's choice of sanction for abuse of discretion. *Davenport v. Odlin*, 2014 MT 109, ¶ 9, 374 Mont. 503, 327 P.3d 478. "A district court retains the necessary flexibility to deal appropriately with violations of Rule 11 and has discretion to tailor sanctions to the particular facts of the case." *Davenport*, ¶ 9.

¶74 The District Court noted that Timothy continued to file motions with the court pro se even after he retained counsel. On June 26, 2014, attorney Wendell B. Dunn filed a notice of appearance as Timothy's counsel. Timothy, through Dunn, answered Wold's first petition for fees on June 26, 2014, stating "there exist issues with these allegations which should be fully addressed in a hearing on this matter." On July 3, 2014, the District Court set a hearing date of July 9, 2014 to address Wold's petition for fees. Timothy also filed a pro se answer to the first petition for fees on July 7, 2014. Also on July 7, 2014, Timothy, acting through Dunn, objected to the hearing date set by the District Court. Dunn withdrew as Timothy's counsel on July 14, 2014. None of Timothy's answers to the fee petitions stated with any specificity why Wold's fees were unreasonable or unnecessary.

26

¶75 The District Court correctly determined that Timothy's multiple objections to Wold's petitions for fees violated M. R. Civ. P. 11(b). Not only were these objections without substance in violation of M. R. Civ. P. 11(b)(3), they were filed for an improper purpose in violation of M. R. Civ. P. 11(b)(1). The District Court did not abuse its discretion by requiring Timothy to personally pay Emerson or Wold for their work preparing for the July and August hearings on the issue of Wold's attorney fees.

¶76 *6. Whether Timothy can allege violations of the Montana Rules of Professional Conduct in this appeal.*

¶77 Timothy also raises allegations of violations of the Rules of Professional Conduct by Wold. Assuming Timothy's allegations had merit, they are not properly before us. First, Timothy did not raise these issues in the District Court for a determination as to whether the alleged violations resulted in prejudice or adverse impact to him. *See Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 35, 303 Mont. 274, 16 P.3d 1002 ("[A] trial court may consider attorney violations of the Rules of Professional Conduct if that misconduct results in prejudice or adversely impacts the rights of the parties in the case pending before it."). Second, the Office of Disciplinary Counsel is the appropriate forum to raise violations of the Montana Rules of Professional Conduct under Rule 1 of the Montana Rules for Lawyer Disciplinary Enforcement. Because Timothy's allegations of attorney misconduct are not properly before us, we will not address them.

**CONCLUSION**

¶78 The District Court did not abuse its discretion by denying Timothy's motion to vacate, nor did it err in its ruling on any of the issues therein, including Timothy's lack of

standing to assert A.M.M.'s due-process rights or Timothy's lack of evidence to challenge any of the appointments made by the District Court. The District Court did not abuse its discretion by striking Timothy's reply brief for untimely service. The District Court did not abuse its discretion when it limited the powers of the conservators to act on behalf of A.M.M. in her role as a corporate director or signatory. The District Court did not abuse its discretion by ordering payment of attorney fees to either Wold or Emerson. Finally, this Court is not the proper place to allege violations of the Montana Rules of Professional Conduct for the first time.

¶79    Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE


Justice Jim Rice, concurring.

¶80    I concur with the Court's resolution of all of the issues, including that Timothy is without standing to raise a due process argument on behalf of his mother, wherein he has argued that A.M.M. had a right to private counsel. However, the involvement of the state public defender in a case involving millions of dollars in assets bears mention.

¶81    As the District Court correctly noted, appointment of the public defender's office in a guardianship case is authorized by the Probate Code. *See* § 72-5-408(2), MCA

("Unless the person to be protected has counsel of the person's own choice, the court shall order the office of state public defender . . . to assign counsel to represent the person . . . ."). Correspondingly, the Montana Public Defender Act provides that a court may order the public defender to assign counsel "in cases in which a person is entitled by law to the assistance of counsel at public expense regardless of the person's financial ability to retain private counsel," including "a person who is the subject of a petition for the appointment of a guardian or conservator in a proceeding under the provisions of the Uniform Probate Code . . . ." Section 47-1-104(4)(b)(vii), MCA. Thus, while it seems unusual for the public defender to be involved in a case like this, the Court correctly concludes that the District Court was authorized to appoint the public defender to represent A.M.M. and had appropriate reason to do so.

¶82 It should also be highlighted that one of the stated purposes of the Public Defender Act is to "ensure that clients of the statewide public defender system pay reasonable costs for services provided by the system based on the clients' financial ability to pay." Section 47-1-102(6), MCA. A public defender account has been statutorily created to receive "payments for the cost of a public defender in proceedings under the provisions of the Uniform Probate Code in Title 72, chapter 5 . . . when the respondent is determined to have the financial ability to pay for a public defender and a judge orders payment . . . ." Section 47-1-110(2)(d), MCA.

¶83 It is a challenge for the public defender system to perform all of its duties within its allotted resources. In guardianship cases where significant private assets are involved, and the client has the "financial ability to pay," § 47-1-110(2)(d), MCA, the public

29

defender and the courts should be diligent to ensure that appropriate reimbursement is ordered to the defender system for services provided.


/S/ JIM RICE