JUSTICE BAKER,
dissenting.
¶24 I dissent.
¶25 The Court today upholds the District Court’s disqualification order without reasoned analysis of the applicable Rule. When Luke Keuffer contacted the Tarlow & Stonecipher firm “about the possibility of forming a client-lawyer relationship,” he became a prospective client pursuant to M. R. Prof. Cond. 1.20(a). It is undisputed, however, that the Keuffers never established a client-attorney relationship with the Tarlow & Stonecipher firm. In Perry, we recognized that Rule 1.20 requires examination of whether a lawyer received information from a prospective client that could be significantly harmful to the prospective client in the matter. Perry, ¶¶ 21, 24. We noted that different analyses apply to the duties a lawyer owes to a current or former client. Perry, ¶¶ 19, 22-23. See Pro-Hand Servs. Trust v. Monthei, 2002 MT 134, 310 Mont. 165, 49 P.3d 56 (relying on M. R. Prof. Cond. 1.9 — which applies to former clients — to determine if there was a “reasonable probability” that confidences were disclosed) superseded by rule as stated in Perry, ¶ 19; Krutzfeldt (relying on M. R. Prof. Cond. 1.7 and 1.10 — which apply to current clients — to determine whether disqualification is required because counsel breached its duty of loyalty).
¶26 Rule 1.18 of the Model Rules of Professional Conduct “is nearly identical” to Montana’s Rule 1.20. Perry, ¶ 21. Similar to our discussion in Perry, the comments to Model Rule 1.18 make clear that while the rule imposes certain duties on a lawyer relating to prospective clients, those duties do not provide prospective clients with the same protections as the duties imposed on lawyers relating to current or former clients.
Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer’s custody, *449 or rely on the lawyer’s advice. A lawyer’s consultations with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients.
Model R. Prof. Cond. 1.18 cmt. 1 (emphasis added). This difference in duties and consequent protections makes sense “[b]ecause the relationship between a prospective client and a lawyer by definition never reaches the stage where the duty of loyalty attaches with full force.” 1 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law Governing Lawyers § 21A.6, 21A-15 (3d ed. Supp. 2012). Accordingly, Model Rule 1.18 “imposes a less stringent regime on the lawyer than where actual clients and former clients are involved. Put another way, the protections afforded to prospective clients are not as extensive as those provided to ‘real’ clients.” Hazard & Hodes, supra, at § 21A.6, 21A-15.
¶27 The District Court disqualified Mossberg’s counsel on the basis of Rule 1.20(c). The court concluded properly that, because Luke was a prospective client, “Tarlow & Stonecipher is prohibited from using or revealing information learned in the consultation,” and that “if Tarlow & Stonecipher received information from Luke that could be significantly harmful to his case, Tarlow & Stonecipher is prohibited from representing Mossberg in this case.” The court emphasized that Renzulli’s “motivation” behind his deposition questions to Stephanie was “improper,” and it found “troubling” the fact that Tarlow & Stonecipher did not disclose the phone conversation to the Keuffers’ counsel at the outset.
¶28 The District Court found that Mossberg’s counsel did not use or reveal information learned from the phone conversation in violation of Rule 1.20(b). The court concluded, however, that there was “no reason why the rule should not be equally applicable when an attorney uses the fact that they consulted with a party and declined to represent that party to intimidate that party or to create an adverse inference about that party’s case.” The court concluded further that “knowing that certain information was not disclosed may be just as harmful as information that was disclosed.” The District Court made no finding that Luke disclosed information that could be significantly harmful to him in the case, and acknowledged that “it is not clear what information was disclosed/learned during Luke’s 6-12 minute consultation with Weamer.” It found nonetheless that “defense counsel used the fact that a consultation even occurred against the [Keuffers] in a significantly harmful manner. Thus, the Court finds that Rule *450 1.20(c), Mont. R. Prof. C. is applicable to the particular circumstances of this case.” The court therefore concluded that “Rule 1.20(c), Mont. R. Prof. C. requires the disqualification of both Tarlow & Stonecipher and the Renzulli Law Firm.”
¶29 Our rule requiring a finding of prejudice or adverse impact — which we originally articulated in Schuff — “applie[s] to current clients.” Perry, ¶ 23. See Pro-Hand, Servs. Trust (analyzing whether there was a “reasonable probability” that confidences were disclosed rather than looking to whether the prospective client would be prejudiced or adversely impacted). In contrast, with a prospective client, if the information disclosed to the attorney could be significantly harmful, disqualification is automatic regardless of prejudice or adverse impact, unless the requirements of Rule 1.20(d) are met.[1] By its plain language, Rule 1.20(c) would disqualify Tarlow & Stonecipher from representing Mossberg in the proceeding — irrespective of any prejudice to the Keuffers — only if Weamer “received information from [Luke] that could be significantly harmful to [Luke] in the matter,” subject to the exceptions allowed by Rule 1.20(d). M. R. Prof. Cond. 1.20(c). The inquiry under Rule 1.20(c) is not “whether information was divulged by the prospective client but whether such information could be significantly harmful to that person in that or a related matter.” Perry, ¶21.
¶30 Model Rule 1.18(c), which is identical to Rule 1.20(c), “sets the bar preventing adverse representation against a former prospective client lower than normal in several ways.” Hazard & Hodes, supra, at § 21A.6, 21A-15 (second emphasis added). Model Rule 1.18(c) most significantly lowers the bar on adverse representation by providing that “the lawyer consulting with the prospective client is not personally barred from later opposing the client, even in the same or a substantially related matter, unless in addition the information learned ‘could be significantly harmful.’ ” Hazard & Hodes, supra, at § 21A.6, 21A-15 (emphasis in original).
¶31 The District Court made no finding that Luke divulged any such Information in this case. Although the court correctly recognized that disqualification under Rule 1.20 is proper only if it could find that Mossberg’s counsel violated Rule 1.20(c), the court exceeded the proscriptions of the Rule by concluding that Rule 1.20(c) “is applicable to the particular circumstances of this case” because “defense counsel *451 used the fact that a consultation even occurred against the [Keuffers] in a significantly harmful manner.” (Emphasis added.) The court observed that Luke could not remember what he may have said to Weamer. But the court’s resulting finding that “knowing that certain information was not disclosed may be just as harmful as information that was disclosed” is not relevant to an inquiry under Rule 1.20(c), which focuses on information the “lawyer received” from the prospective client. Perry, ¶ 21. Moreover, after considering the evidence, the court found that “it is not clear what information was disclosed/learned during Luke’s 6-12 minute consultation with Weamer.” The District Court did not, and could not, make the requisite finding under Rule 1.20(c) that Weamer received information that is “significantly harmful” to the Keuffers based upon a finding that it is unclear what information Luke disclosed. Accordingly, there was no justification for disqualification under Rule 1.20(c).
¶32 The District Court also considered Rule 1.20(b) and found as a matter of fact that Mossberg’s counsel “did not use or reveal information learned” during the phone conversation. The District Court determined, however, that Rule 1.20(b) should be “equally applicable when an attorney uses the fact that they consulted with a party ... to intimidate that party or to create an adverse inference about that party’s case.”
¶33 The Preamble to the Montana Rules of Professional Conduct provides that “[a] lawyer should use the law’s procedures only for legitimate purposes and not to harass or intimidate others,” and be “guided by personal conscience and the approbation of professional peers.” M. R. Prof. Cond. Preamble ¶¶ 6, 8. The Preamble continues:
Within the framework of these Rules ... many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules. These principles include the lawyer’s obligation to protect and pursue a client’s legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system.
M. R. Prof. Cond. Preamble ¶ 10. It is within this context that Rule 1.20(b)’s prohibition against “us[ing] or reveal[ing] information learned in the consultation(s)” with a prospective client must be analyzed.
¶34 Here, Renzulli used Luke’s communication with Weamer during his deposition of Stephanie as a litigation tactic to imply that the Keuffers had a weak case. Renzulli’s questioning demonstrated a lack of professional, courteous, and civil attitude toward not only the *452 Keuffers, but to the legal system. Renzulli’s attempt to harass and intimidate the Keuffers was out of bounds. Even though the District Court found as a matter of fact that Renzulli did not reveal any specific information that Luke divulged to Weamer, the District Court properly recognized that Luke’s communication to Tarlow & Stonecipher of “the facts” that prompted him to seek legal assistance was not to be “used” against him by counsel for the adverse party. Accord Perry, ¶¶ 29-30 (analyzing whether an attorney violated her duty of confidentiality to a prospective client). See also M. R. Prof. Cond. Preamble ¶ 18. Renzulli acknowledged that he was attempting to do just that by suggesting that the Keuffers had to shop the case around before they could find a lawyer who was willing to take it.
¶35 But the Court misapplies Rule 1.20(b) by upholding disqualification on this basis. As discussed above, Rule 1.20 does not trigger disqualification where no significantly harmful information was disclosed. The Court proves the point by its acknowledgment that Rule 1.20(b) does not “require that the information used or revealed be ‘significantly harmful,’ as would be required to form the basis for disqualification under Rule 1.20(c).” Opinion, ¶ 18. See Model R. Prof. Cond. 1.18 cmt. 6 (a “lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter” (emphasis added)).
¶36 When a lawyer has not received information that could be significantly harmful to a prospective client, the concerns regarding the adverse use of information by the lawyer under Rule 1.20(b) are minimized. Stated another way:
If no client relationship is formed, the principle of Rule 1.9 — explicitly cross-referenced by Rule 1.18(b) — prohibits adverse use of information gained during the earlier consultations with the “almost former clients.” Of course, if the unfruitful discussions were truly non-substantive, or involved little or no information “that could be significantly harmful,” in the language of Rule 1.18(c), the danger that confidentiality will be compromised is correspondingly small. In such cases the lawyer should not be prohibited from “using” information that he does not really have.
Hazard & Hodes, supra, at § 21A.5, 21A-10 (citing Pro-Hand Servs. Trust (concluding that a telephone conversation between a prospective client and a lawyer’s secretary does not bar the lawyer from subsequently representing the other side, especially where the prospective client makes no showing that any confidential information *453 was provided)). Without disclosure of information “that could be significantly harmful” to the Keuffers, the conclusion follows that disqualification under Rule 1.20 is not proper because Mossberg’s counsel “is not prohibited from representing” Mossberg under the plain language of Rule 1.20. Model R. Prof. Cond. 1.18 cmt. 6.
¶37 Absent a basis for disqualification under Rule 1.20(c), disqualification is not appropriate without the proper showing of harm. We have made clear that “a party cannot receive relief from a district court for the mere misconduct of an attorney or firm.” Schuff, ¶ 34. But
a trial court may consider attorney violations of the Rules of Professional Conduct if that misconduct results in prejudice or adversely impacts the rights of the parties in the case pending before it.... A district court’s discretion in this regard flows from its inherent authority to control trial administration in the interest of fairness and justice.
Schuff, ¶ 35 (citations omitted). See also § 3-1-111, MCA (granting all courts the power to “provide for the orderly conduct of proceedings,” and “control, in furtherance of justice, the conduct” of all other persons “in any manner connected with a judicial proceeding”). “In order to succeed on a motion to disqualify opposing counsel, a party ‘must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court.’ ” Krutzfeldt, ¶ 17 (quoting Schuff, ¶ 36). Prejudice in this context means that, irrespective of how the Keuffers understandably felt after Stephanie’s deposition, in order to invoke the harsh remedy of disqualification, they must demonstrate how their rights in the litigation would be adversely impacted by Renzulli’s and Tarlow & Stonecipher’s continued representation of Mossberg.
¶38 In analyzing attorney disqualification, we have recognized that “disqualification has a significant effect on litigation and should be imposed sparingly.” Krutzfeldt, ¶ 33. “If there are good reasons to disqualify counsel, then we accept the burdens that disqualification imposes. But there should be good reasons.” Krutzfeldt, ¶ 33 (quoting Ronald D. Rotunda & John S. Dzienkowski, Legal Ethics: The Lawyer’s Deskbook on Professional Responsibility § 1.7-3, 352 (2011-2012 ed. 2011)). Moreover, because “[disqualification burdens the judicial system with delays and it burdens the party that must retain and reeducate new counsel in the proceedings,” disqualification is a remedy that should be imposed only if other remedies are lacking. Krutzfeldt, ¶ 33. In Krutzfeldt, we ordered disqualification because of Rule *454 1.10(a)’s automatic imputed disqualification when there is a concurrent conflict of interest, Krutzfeldt, ¶ 34; hence, “there is no course short of disqualifying [the opposing party’s lawyer] which would respect [counsel]’s duty of loyalty to the Krutzfeldts,” who were his current clients. Krutzfeldt, ¶ 32. The dearth of cases in which this Court has required disqualification of an attorney for violation of the Rules of Professional Conduct — particularly when related to a party with whom the lawyer has formed no attorney-client relationship — demonstrates the rare imposition of such a harsh remedy.
¶39 The District Court has ample discretion to impose alternate remedies or to consider whether any sanction may be appropriate against Renzulli personally. Chief among those remedies would be an order in limine precluding the offensive line of questioning and any mention of the consultation before a jury. The District Court also has authority under M. R. Civ. P. 30(d)(2) to impose an appropriate sanction on a person who frustrates the fair examination of a deponent. As we have recognized, “the Office of Disciplinary Counsel is the appropriate forum to raise violations of the Montana Rules of Professional Conduct under Rule 1 of the Montana Rules for Lawyer Disciplinary Enforcement.” In re Guardianship & Conservatorship of A.M.M., 2015 MT 250, ¶ 77, 380 Mont. 451, 356 P.3d 474. The Rules of Professional Conduct “are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.” M. R. Prof. Cond. Preamble ¶ 21. Accordingly, a “violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation.” M. R. Prof. Cond. Preamble ¶ 21. Furthermore, the Rules are not to be invoked as a tool in litigation to sanction an attorney. See M. R. Prof. Cond. Preamble ¶ 21. Rather, “[t]he Rules exist for the protection of clients.” Krutzfeldt, ¶ 34.
¶40 The interests of Renzulli’s client — about whom the Court is noticeably silent — also are entitled to consideration before disqualifying counsel of its choice. Recognizing that a party “must not be lightly separated from her counsel of choice,” we have suggested that disqualification of counsel should not be used for punitive purposes. Mowrer v. Eddie, 1999 MT 73, ¶ 23, 294 Mont. 35, 979 P.2d 156. In Krutzfeldt, we acknowledged the impact on the client of the disqualified firm but, because “there was no opportunity to implement a screen before [the Krutzfeldts’ attorney] began working” at the firm of opposing counsel, the prejudice to them could not be undone. Krutzfeldt, ¶ 33. Neither the District Court nor the Court today offer any consideration of the interests of Mossberg or whether the Keuffers’ *455 substantial rights may be protected by other means.
¶41 Finally, the Court does not address the Keuffers’ argument that Tarlow & Stonecipher should have disclosed Luke’s phone call to the Keuffers’ counsel after discovering the consultation during the conflict check. That argument is not supported by the Rule. Rule 1.20(c) provides that a lawyer “shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d).” M. R. Prof. Cond. 1.20(c). Rule 1.20(d), in turn, governs disclosure to the prospective client and provides:
(d) Representation is permissible if both the affected client and the prospective client have given informed consent, confirmed in writing, or:
1. the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
2. written notice is promptly given to the prospective client.
M. R. Prof. Cond. 1.20(d). In other words, Rule 1.20(d) requires disclosure to the prospective client only if a lawyer receives information that could be significantly harmful to the prospective client.
¶42 Similarly, Model Rule 1.18(d) provides that disclosure to a prospective client is required only “[w]hen the lawyer has received disqualifying information as defined in paragraph (c).” Model R. Prof. Cond. 1.18(d) (emphasis added). Model Rule 1.18(c) defines “disqualifying information” as “information ... that could be significantly harmful to [the prospective client] in the matter.” Model R. Prof. Cond. 1.18(c). Accordingly, “informed consent, confirmed in writing,” “written notice,” and screening under Model Rule 1.18(d) are not necessary unless the “lawyer has received disqualifying information.” Model R. Prof. Cond. 1.18(d). Stated another way, disclosure under “Rule 1.18(d) comes into effect when [the Rule] disqualifies the lawyer who personally dealt with the former prospective client.” Rotunda & Dzienkowski, Legal Ethics: The Lawyer’s Deskbook on Professional Responsibility § 1.18-2, 743 (2015-2016 ed. 2015).
¶43 As the Court implicitly acknowledges, Opinion, ¶¶ 20-21, no showing was made that significantly harmful information was received by Weamer during her phone conversation with Luke. Mossberg’s counsel, therefore, was not required to disclose the consultation to the *456 Keuffers under Rule 1.20(d).
¶44 In summary, the Court effectively adopts a lower disqualification threshold with respect to prospective clients than the standards that apply to current and former clients — at odds with the express language and stated purpose of Rule 1.20. Without a showing that significantly harmful information was communicated, the Court’s application of Rule 1.20 in these circumstances is gravely mistaken.
JUSTICE COTTER joins in the dissenting Opinion of JUSTICE BAKER.

 Rule 1.20(d) allows continued representation under certain exceptions, discussed below.