No. 01-558

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 244

IN RE THE MARRIAGE OF

GEORGE EVERETT DENOWH, by and
through his Guardian/Conservator JUDY DECK,

Petitioner and Respondent,

and

AGNES DENOWH,

Respondent and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DR-99-501
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William J. O'Connor II, O'Connor & O'Connor, Billings, Montana

For Respondent:

J. Reuss, Wright, Tolliver, Guthals, Billings, Montana

Submitted on Briefs: July 31, 2002

Decided: September 11, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Judy Deck (Judy) was appointed the guardian and conservator of Respondent George Everett Denowh (George). Judy subsequently filed a petition for dissolution in the Thirteenth Judicial District Court, Yellowstone County, seeking to dissolve the marriage between George and Appellant Agnes Denowh (Agnes). The District Court granted Judy's petition, and Agnes appeals. We reverse the judgment of the District Court.

¶2     We restate the sole issue on appeal as follows:

¶3     Did the District Court err when it concluded that Judy could bring a dissolution proceeding on behalf of George?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     George and Agnes were married on July 29, 1994. At the time of their marriage, George was 69 years old and Agnes was 58 years old. Both George and Agnes have adult children from previous marriages.

¶5     In 1997, George was diagnosed with lung cancer. Subsequent to his diagnosis, George resided with Agnes at their home in Billings, Montana; however, he eventually began to need full-time care. As a result, George was admitted to the VA Nursing Home in Miles City, Montana, on February 13, 1998.

¶6     While at the VA Nursing Home, George's health continued to deteriorate and he was eventually diagnosed as terminal. On March 6, 1999, George's daughter, Judy, filed a petition requesting that she be appointed George's legal guardian. The District Court issued

2

an order on March 12, 1999, granting Judy temporary guardianship over George. George subsequently filed a petition for dissolution on April 28, 1999, seeking to dissolve his marriage to Agnes. On May 5, 1999, Agnes filed a motion to dismiss George's petition, alleging that George lacked the capacity to bring a dissolution action.

¶7 The District Court granted Judy permanent guardianship and conservatorship over George on August 5, 1999. On December 29, 1999, the District Court issued an order, stating that George lacked the capacity to bring a dissolution action on his own behalf. The District Court then granted Judy additional time to amend George's dissolution petition. Judy filed an amended petition for dissolution on April 13, 2000, seeking, as George's guardian, to dissolve the marriage between George and Agnes.

¶8 On November 28, 2000, Agnes filed a petition for writ of supervisory control, requesting that this Court stay the dissolution proceeding pending in District Court. We concluded that pursuant to Rule 17, M.R.App.P., the instant case failed to meet the requirements necessary to justify supervisory control. Accordingly, we denied Agnes' petition on January 9, 2001, without reaching the merits of the matter.

¶9 The case proceeded to non-jury trial on April 25, 2001. On June 6, 2001, the District Court issued its findings of fact and conclusions of law, dissolving the marriage between George and Agnes. Agnes appealed on July 2, 2001.

## STANDARD OF REVIEW

¶10 In a dissolution proceeding, this Court reviews a district court's findings of fact to determine whether the district court clearly erred. The clearly erroneous standard consists

3

of a three-part analysis: (1) this Court will review the record to determine if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, this Court determines if the trial court misapprehended the effect of the evidence; and (3) if substantial evidence exists and the effect of the evidence has not been misapprehended, this Court may still conclude that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *In re Petition of Fenzau*, 2002 MT 197, ¶ 18, 311 Mont. 163, ¶ 18, 54 P.3d 43, ¶ 18. We review a trial court's conclusions of law to determine whether those conclusions are correct. *Fenzau*, ¶ 18.

## DISCUSSION

¶11    Did the District Court err when it concluded that Judy could bring a dissolution proceeding on behalf of George?

¶12    On appeal, Agnes contends that the District Court erred when it concluded that a guardian could bring a dissolution proceeding on behalf of his or her ward. This issue is one of first impression for this Court.

¶13    We begin by noting that although several courts have addressed the instant issue, no single majority rule has emerged. That is, while a majority of the jurisdictions to address the issue currently allow a guardian to bring or maintain a dissolution action on behalf of a ward, only a portion of those jurisdictions allow such an action outright. The remaining jurisdictions require either: (1) an express statute or rule authorizing the action; or (2) some degree of competency on the part of the ward to express a desire for a dissolution. See *In*

4

*re Marriage of Burgess* (Ill. 1998), 707 N.E.2d 125, 127. Although the decisions of the various courts are not in harmony with one another, a majority of the courts to address this issue have based their decisions on their respective state's statutory authority. See for example *Phillips v. Phillips* (Ga. 1947), 45 S.E.2d 621, *Johnson v. Johnson* (Ky. 1943), 170 S.W.2d 889, *In re Marriage of Drews* (Ill. 1986), 503 N.E.2d 339, *In re Marriage of Burgess* (Ill. 2000), 725 N.E.2d 1266, and *Ruvalcaba by Stubblefield v. Ruvalcaba* (Ariz. 1993), 850 P.2d 674. We deem it appropriate to take our cue from such cases and examine our own statutes governing the guardian/ward relationship.

¶14    Section 72-5-321, MCA (1999), addresses the powers and duties of the guardian of an incapacitated person. Section 72-5-321(2), MCA (1999), provides, in pertinent part:

> A full guardian of an incapacitated person has the same powers, rights, and duties respecting his ward that a parent has respecting his unemancipated minor child, except that a guardian is not liable to third persons for acts of the ward solely by reason of the parental relationship.

Therefore, pursuant to § 72-5-321(2), MCA (1999), the guardian of an incapacitated person has the same powers, rights and duties respecting his or her ward that a parent has respecting his or her unemancipated minor child.

¶15    The relationship between a guardian and a ward is also addressed in Rule 17(c), M.R.Civ.P. Rule 17(c), M.R.Civ.P., provides, in pertinent part, that: "Whenever an infant or incompetent person has a representative, such as a general guardian, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person." However, the general rights granted to a guardian under Rule 17(c), M.R.Civ.P.,

do not trump the more specific provisions of § 72-5-321, MCA (1999). That is, we have repeatedly held that a specific statute controls over a more general statute. See *Redies v. Cosner*, 2002 MT 86, ¶ 19, 309 Mont. 315, ¶ 19, 48 P.3d 697, ¶ 19. Section 72-5-321, MCA (1999), is a specific statute outlining the powers and duties of the guardian of an incapacitated person, while Rule 17(c), M.R.Civ.P., is a general rule pertaining to the right of guardians and fiduciaries of both infants and incompetent persons to litigate on their behalf. Accordingly, § 72-5-321, MCA (1999), controls over Rule 17(c), M.R.Civ.P., for purposes of the instant case. Therefore, we conclude that the only types of proceedings that the guardian of an incapacitated person may bring on behalf of his or her ward are those types of proceedings that a parent may bring on behalf of his or her unemancipated minor child.

¶16    By definition, an unemancipated minor child is a child that is unmarried. See BLACK'S LAW DICTIONARY 539 (7th ed. 1999). It follows, then, that a parent does not have the "power, right, or duty" to bring or maintain a dissolution proceeding on behalf of his or her unemancipated minor child. This being so, pursuant to § 72-5-321(2), MCA (1999), the guardian of an incapacitated person likewise does not have the "power, right, or duty" to bring or maintain a dissolution proceeding on behalf of his or her ward.

¶17    There are also policy reasons supporting this decision. A guardian's purpose is to promote and protect the well-being of his or her ward. Section 72-5-306, MCA (1999). Thus, in examining cases involving the guardian/ward relationship, this Court routinely takes the interests of the ward into consideration. See for example *Matter of Guardianship of*

6

*Nelson* (1983), 204 Mont. 90, 663 P.2d 316 (in which we considered whether or not the guardian of an incapacitated person had her ward's best interests in mind), and *Matter of Estate of West* (1994), 269 Mont. 83, 887 P.2d 222 (in which we considered whether or not a limited guardianship was in an incapacitated person's best interests).

¶18    In this case, the guardian of an incapacitated person is seeking to effectuate a dissolution proceeding on behalf of her ward. While guardians regularly bring actions on behalf of their wards, as permitted under Rule 17(c), M.R.Civ.P., such actions generally seek some type of benefit for the ward. As such, there is usually no question as to whether the action is in the ward's best interests. The instant situation, however, is not analogous. For one thing, because a dissolution provides no obvious benefit to an incapacitated ward, there exists no basis for determining whether the dissolution is in the ward's best interests. Further, the dissolution of an incapacitated ward's marriage involves not only the ward's interests, but those of the ward's spouse as well. Thus, the interests of a third party who is *not* subject to a guardianship are adversely affected by such a decision. Finally, the relationship between spouses is highly personal. To allow a guardian to bring an action to dissolve his or her ward's marriage would be to allow a guardian to interfere in his or her ward's personal relationships. Accordingly, for all the foregoing reasons, we conclude that it would be inappropriate for the guardian of an incapacitated person to have the power to bring or maintain a dissolution proceeding on behalf of his or her ward.

¶19    In *In re Marriage of Burgess*, 707 N.E.2d at 128, the Appellate Court of Illinois stated that "a guardian is a creature of statute with only those powers granted to it and, thus, is

7

without standing to do anything beyond its specific grant of authority." We agree. Nothing in the language of § 72-5-321, MCA (1999), grants the guardian of an incapacitated person the authority to bring or maintain a dissolution proceeding on behalf of his or her ward. Accordingly, we hold that the District Court erred when it concluded that Judy could bring a dissolution proceeding on behalf of George.

¶20 The judgment of the District Court dissolving the marriage between George and Agnes is reversed.

/S/ PATRICIA COTTER

We Concur:

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE