# IN THE MATTER OF:
# J. A. L.,
# An Incapacitated Person.

No. DA 13-0767.
Submitted on Briefs June 25, 2014.
Decided July 23, 2014.
2014 MT 196.
376 Mont. 18.
329 P.3d 1273.

For Appellant: **Tina Morin**, Morin Law Firm, PLLC; Butte.

For Appellee: **Steven J. Shapiro**, Stephen J. Shapiro, P.C.; Montana City; **Debbie M. Churchill**, Churchill Law Office, PLLC; Helena.

JUSTICE WHEAT delivered the Opinion of the Court.

¶1 Ron Lowney (Ron) appeals from the orders of the Montana Second Judicial District Court, Silver Bow County, affirming the appointment of his wife, J.A.L.'s, brother and sister-in-law as her guardians and conservators; authorizing them to restrict his access to her; and awarding them reasonable attorney fees. We affirm.

## ISSUES
¶2 We address the following issues:

*1. Did the District Court err by appointing J.A.L.'s brother and sister-in-law as her guardians and conservators, rather than Ron, who had priority?*

*2. Did the District Court abuse its discretion by ordering Ron to pay reasonable attorney fees?*

## FACTUAL AND PROCEDURAL BACKGROUND
¶3 Ron and J.A.L. are married and have been together for over fifty years. J.A.L. has multiple sclerosis, which has limited her physical mobility. She also suffers from some cognitive impairments. Until 2011, she lived with Ron, who cared for her. Both she and Ron wished that she remain in the marital home. Unfortunately, over time Ron grew unable to care for her, even with assistance. As a result, she entered an assisted living facility. Due to Ron's behavior with medical personnel and staff at the assisted living facility, she was subsequently discharged. This sequence occurred more than once. In 2011, Ron suffered an emotional breakdown and spent time in the Montana State Hospital. Upon discharge he stopped taking psychiatric medications, because they were having deleterious physical side effects, and did not seek additional treatment for his mental health issues.

¶4 Meanwhile, J.A.L.'s son and daughter sought and obtained appointments as J.A.L.'s co-guardians/conservators. She was placed at an assisted living facility in Helena, Montana, and appeared happy there. Contacts with Ron changed this. At his urging, she began acting out at the facility and was eventually discharged. Ron was disruptive when he visited the facility and would call as many as forty times a day. J.A.L.'s son and daughter had difficulty dealing with Ron and had difficulty responding to the problems he caused in their mother's affairs. A Guardian ad Litem (GAL) was appointed for J.A.L., but Ron

interfered with J.A.L.'s communications with the GAL. Ultimately, following an emergency court hearing, the court removed J.A.L.'s son and daughter as her co-guardians/conservators and instead appointed her brother and sister-in-law (the Bugnis). J.A.L. was then readmitted to the assisted living facility in Helena for a probationary period on condition that she have no contact with Ron. Since readmission, she has been doing well there.

¶5 Beginning in 2012, Ron has filed two petitions to either be appointed as guardian/conservator for J.A.L. or to terminate the guardianship. The District Court has held six hearings to determine whether J.A.L. is in need of a guardian and who is the appropriate person to serve. After the final hearing, on September 4, 2013, the District Court issued its order finding that J.A.L. is an incapacitated person in need of a permanent guardian and conservator; appointing the Bugnis as full co-guardians/conservators; and authorizing the Bugnis to facilitate limited future contact between Ron and J.A.L. Following appointment of the Bugnis as co-guardians/conservators, the District Court issued an order assessing attorney's fees against Ron.

¶6 Ron appeals from these orders.

## STANDARD OF REVIEW

¶7 This Court reviews a district court's appointment of a guardian and determination of the scope of the guardian's responsibilities for an abuse of discretion. *In re Estate of West*, 269 Mont. 83, 91, 887 P.2d 222, 227 (1994). We exercise de novo review to determine whether the court correctly interpreted and applied the relevant statutes. *In re Mental Health of E.P.B.*, 2007 MT 224, ¶ 5, 339 Mont. 107, 168 P.3d 662. We will not disturb the findings supporting a district court's determination unless they are clearly erroneous. *In re Guardianship & Conservatorship of Gilroy*, 2004 MT 267, ¶ 16, 323 Mont. 149, 99 P.3d 205.

¶8 We review a district court's decision to award attorney fees for an abuse of discretion. *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 269, ¶ 13, 352 Mont. 105, 214 P.3d 1260.

## DISCUSSION

¶9 *1. Did the District Court err by appointing J.A.L.'s brother and sister-in-law as her guardians and conservators, rather than Ron, who had priority?*

¶10 Section 72-5-306, MCA, provides that "[g]uardianship for an incapacitated person may be used only as is necessary to promote and

protect the well-being of the person" and may be ordered "only to the extent that the person's actual mental and physical limitations require it." Section 72-5-312, MCA, sets forth priorities for appointment as guardian of an incapacitated person. Relevant to this proceeding, absent the incapacitated person's reasonably intelligent choice, the spouse of the incapacitated person has first priority, followed by the incapacitated person's adult child or children, followed by a relative who has demonstrated a sincere, longstanding interest in the incapacitated person's welfare. Section 72-5-312(2), MCA. These priorities are not binding, however, and the court may appoint "the person, association, or nonprofit corporation that is best qualified and willing to serve." Section 72-5-312(3), MCA.

¶11 ▓ The evidence before the District Court supported the court's determination that J.A.L. had declining physical and cognitive capacities and needed a guardian/conservator. Section 72-5-312, MCA, vests the district court with discretion to appoint as guardian/conservator a person or entity who is best-qualified and willing to serve, regardless of the priorities set forth by the statute. The fact that Ron is J.A.L.'s husband, standing alone, does not require the court to appoint him as her guardian. The District Court, in appointing the Bugnis as co-guardians/conservators, specifically found that "Ron's history of inappropriate behavior in caring for [J.A.L.], dealings with other persons and refusal to obey the orders of the Court" gave rise to good cause not to appoint him as J.A.L.'s guardian/conservator. The court found that the Bugnis "demonstrate a good understanding of [J.A.L.'s] needs and make accommodations to ensure [J.A.L.'s] needs are met and to protect her health and welfare." Accordingly, the court found that the Bugnis were best qualified to serve as permanent co-guardians/conservators. The District Court did not abuse its discretion in making this determination.

¶12 Ron's contention on appeal that the District Court erred by permitting the Bugnis to restrict contact between him and J.A.L. is no more persuasive. A court-appointed full guardian of an incapacitated person has the same powers, rights, and duties respecting the ward that a parent has respecting an unemancipated minor child, including the power to give consents or approvals required for the ward to obtain medical or other professional care. Section 72-5-321(2), MCA. While we have held that a guardian may not bring a marital dissolution proceeding on behalf of a ward, we have not held that a guardian may not in any way influence the ward's marital relationship. *In re Marriage of Denowh*, 2003 MT 244, ¶ 18, 317 Mont. 314, 78 P.3d 63.

Instead, we have explained that the guiding principle to evaluate a guardian's actions should be whether they seek some benefit to the ward, or are in the ward's best interests. *See In re Marriage of Denowh*, ¶ 18. An incapacitated person may not be limited in the exercise of any civil or political rights—including any right to marital relations—except those that are clearly inconsistent with the exercise of the powers granted to the guardian. Section 72-5-316(3), MCA.

¶13 ■ Here, the Bugnis' agreement to limit contact between J.A.L. and Ron was necessary for J.A.L. to receive care from the assisted living facility where she had been thriving before Ron's interference. It is apparent from the facts set forth in the District Court's order, as well as the record as a whole, that the Bugnis were acting in J.A.L.'s best interests when they decided to limit her contacts with Ron. Without these limitations, she likely would have been discharged from the assisted living facility at which she was improving, as she had been discharged from previous facilities due to Ron's behavior. Had the District Court's order not allowed for some limitations on Ron's contacts with J.A.L., it would have been inconsistent with the powers granted to the Bugnis to give consents or approvals necessary for J.A.L. to obtain needed professional care. Accordingly, the District Court's order allowed for these limitations to continue, although it provided that "limited future contact between Mr. and Mrs. Lowney *shall* be facilitated through Robert and Debbie Bugni." (Emphasis added.) The District Court's order did not preclude Ron from seeing his wife, but rather *required* the Bugnis to facilitate those contacts. Thus, it is not the "practical dissolution" of their marriage Ron would label it. While it appears that Ron loves J.A.L. and wants to be with her, we conclude that the District Court acted within its discretion in limiting Ron's contacts with J.A.L. and did not err in determining such limitations were necessary.

¶14 *2. Did the District Court abuse its discretion by ordering Ron to pay reasonable attorney fees?*

¶15 Montana follows the American Rule that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision. *United Nat'l Ins. Co.*, ¶ 37. The District Court, however, also retains the power to grant complete relief under its equity power. *Foy v. Anderson*, 176 Mont. 507, 511, 580 P.2d 114, 116 (1978). Such awards should not establish precedent, but should be granted on a case by case basis. *Foy*, 176 Mont. at 511, 580 P.2d at 116-17. We have held that the *Foy* "equitable" exception applies only in situations where a party has been forced to defend against a wholly frivolous or malicious

action. *Braach v. Graybeal*, 1999 MT 234, ¶ 9, 296 Mont. 138, 988 P.2d 761. It is invoked "infrequently." *Youderian Constr. v. Hall*, 285 Mont. 1, 15, 945 P.2d 909, 917 (1997). "[T]he exception does not apply where the losing party had a reasonable basis to believe his cause might prevail." *Estate of Pruyn v. Axmen Propane, Inc.*, 2009 MT 448, ¶ 75, 354 Mont. 208, 223 P.3d 845.

¶16 While we can find no support for the District Court's sweeping statement that it "has authority in a guardianship proceeding to order the payment of attorney fees by appropriate parties," we may still affirm a district court where it reaches the right result for the wrong reason. *See State v. Ellison*, 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646. We conclude that here, although the District Court did not expressly invoke its equitable powers, the court correctly awarded the Bugnis attorney fees pursuant to those powers in this action.

¶17 The procedural history and facts of the case supported the District Court's award of attorney fees pursuant to its equity powers. This proceeding has been before the same District Court judge for at least three years, over the course of which the court held several hearings and considered many filings of the parties. The District Court is very familiar with the facts and had ample opportunity to observe the conduct of the parties and the witnesses. We "must give due regard to the trial court's opportunity to judge the witnesses' credibility." M. R. Civ. P. 52(a)(6). The District Court found that the "routine" guardianship proceeding had been complicated by Ron's filing two "frivolous" petitions to terminate the guardianship; his interference with J.A.L.'s care; and his many changes of attorney. The District Court also noted that Ron had not given any assets to the guardians and attorneys to meet the obligations of the proceeding—and the guardians had been forced to use their own money to pay for any of J.A.L.'s needs that were not covered by government benefits. This occurred despite the fact that all of J.A.L.'s assets had been transferred to Ron to make her eligible for Medicaid and he had been directed by court order to provide amounts for her support. Under these circumstances, the determination that equity required Ron to pay J.A.L.'s attorneys' reasonable fees was not an abuse of discretion.

¶18 ▮ The record also supports the District Court's determination because Ron's petitions were frivolous: The facts show that Ron could have had no reasonable basis to believe his cause might prevail. Ron himself had acknowledged that he could not provide adequate care for J.A.L. Following that recognition, he spent time in a mental health facility. Upon release, he did nothing to care for his own mental health

needs and instead consistently disrupted J.A.L.'s care by harassing staff at her assisted living facilities and encouraging J.A.L. to behave badly so she would be dismissed from the facilities. His behavior was so egregious that the final assisted living facility would not agree to readmit J.A.L. unless Ron was prevented from contacting her. Particularly in a case such as this one, where the focus should have been on J.A.L.'s best interests, Ron's petitions were frivolous because they ignored the reality of his ability to care for her. Thus, the District Court did not abuse its discretion in exercising its equitable power to award attorney fees to the co-guardians/conservators incurred in the defense of Ron's frivolous action.

## CONCLUSION

¶19 While it is with heavy hearts that we consider the facts of this case, we conclude that the District Court did not abuse its discretion in appointing the Bugnis as full co-guardians/conservators and in requiring Ron to pay their attorneys' reasonable fees.

¶20 Affirmed.

CHIEF JUSTICE McGRATH, JUSTICES SHEA, McKINNON and RICE concur.