DA 14-0276

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 291N

IN THE MATTER OF THE ESTATE OF L.D.L.,

     An Incapacitated Person.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DG-02-16
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Gizelle Letourneau (self-represented); Butte, Montana

    For Appellee:

        Jean Paul Letourneau (self-represented); Butte, Montana

        Submitted on Briefs:  October 8, 2014
              Decided:  November 5, 2014

Filed:

                     Clerk

Justice Micheal E Wheat delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of nonciteable cases published in the Pacific Reporter and Montana Reports.

¶2     Gizelle Letourneau (Gizelle) appeals from the order of the Montana Second Judicial District Court, Silver Bow County, denying her motion to terminate the guardianship of J.P. Letourneau (J.P.) over L.J. (formerly known as L.D.L.).  We affirm.

¶3     On March 13, 2002, Gizelle filed a petition for appointment of a guardian for her mother, L.J.  On April 26, 2002, following a hearing on the matter, the District Court issued an order finding that L.J. was an incapacitated person.  In the same order, the court appointed J.P. and Colette Gladson (Colette), both children of L.J., co-guardians of L.J.

¶4     On September 11, 2006, L.J. married and moved to Canada.  L.J. was apparently functioning well on her own at this time and was able to make her own financial decisions. Because of L.J.'s improved state, J.P. and Colette backed away from their roles as guardians, leaving L.J. to live independently with her husband in Canada.  Eventually, L.J.'s husband passed away, and L.J. returned to Butte.

¶5     In 2012, Colette discovered that L.J. had fallen victim to a telephone or mail fraud scheme, losing a significant amount of money.  Around this time, Colette again resumed responsibility for L.J.'s financial decisions as her guardian.

¶6     In August 2013, L.J. had a stroke and was hospitalized.  L.J. was rendered nearly immobile and required full-time care.  She was placed in a rehabilitation center in Butte.  Not

2

satisfied with the care that L.J. was receiving, Colette decided in late 2013 or early 2014 to move to Butte to become L.J.'s full-time caregiver.

¶7 Meanwhile, during late 2013, Gizelle submitted letters to the District Court, requesting that she be granted rights to control L.J.'s personal, health, and welfare decisions. She filed a motion to terminate Colette's and J.P.'s guardianship of L.J. on October 22, 2013. Soon thereafter, Colette resigned as co-guardian for reasons related to her new role as L.J.'s caregiver.

¶8 After holding a hearing on Gizelle's motion, the District Court issued an order refusing to terminate J.P.'s guardianship of L.J. The court determined, among other things, that the 2002 guardianship order was still in effect and that J.P. continued to retain all the rights, privileges, and responsibilities of a full guardian of L.J.

¶9 On appeal, Gizelle makes several arguments, which can be consolidated and restated as follows: (1) the District Court should have determined that J.P. has not acted in the best interests of L.J. and, for this reason, should have terminated J.P.'s guardianship; and (2) the District Court erred when it determined that J.P.'s guardianship had not terminated as a matter of law.

¶10 With regard to the first restated argument, Gizelle claims J.P. neglected and abused L.J. in various ways and claims J.P. has not followed L.J.'s wishes. She implies that these acts would have supported a finding that J.P. did not meet his duty to act in L.J.'s best interest, and she concludes that this means that the District Court should have terminated J.P.'s guardianship.

3

¶11 We review a district court's findings of fact to determine whether they are clearly erroneous. Findings of fact are clearly erroneous if they are not supported by substantial evidence. *In re Guardianship & Conservatorship of Gali*, 2000 MT 83, ¶ 10, 299 Mont. 178, 998 P.2d 541. The decision whether to terminate or continue a guardianship is a matter of discretion for the district court. *See* § 72-5-325(1), MCA ("the court . . . may remove a guardian if in the best interests of the ward"); *cf. In re J.A.L.*, 2014 MT 196, ¶ 7, 376 Mont. 18, 329 P.3d 1273 (stating that appointment of a guardian is reviewed for abuse of discretion). We review matters of discretion for abuse of discretion. *In re Co-Guardianship of D.A.*, 2004 MT 302, ¶ 11, 323 Mont. 442, 100 P.3d 650.

¶12 We are neither able to review the factual findings nor the District Court's purported decision on this issue, as neither appears in the record before this Court. The District Court's order discusses the questions of law raised in Gizelle's second restated argument, but it does not make any findings of fact or explicitly address the question of whether J.P.'s guardianship is in the best interests of L.P. As no transcripts were included in the record before this Court, the District Court's order is the only indication of what issues were contested and settled during the guardianship proceeding. Based on that order, there is no indication that the District Court made any relevant findings of fact, that the District Court ruled on this issue, or that this issue was even raised by Gizelle at the hearing. Without an adequate record on this issue, we cannot address it here. *See* M. R. App. P. 8(2)-(3); *Giambra v. Kelsey*, 2007 MT 158, ¶¶ 34-36, 338 Mont. 19, 162 P.3d 134; *Rolison v. Bozeman Deaconess Health Servs.*, 2005 MT 95, ¶ 32, 326 Mont. 491, 111 P.3d 202.

4

¶13 With regard to the second restated argument, Gizelle claims that L.J.'s marriage ended her incompetency and the guardianship as a matter of law. She also claims that even if this is not so, L.J. revoked the power of attorney previously given to J.P. and that this ended the guardianship as a matter of law. For these reasons, she argues that the District Court erred by concluding that J.P. continued to be the guardian of L.J.

¶14 The District Court determined that the order appointing J.P. as guardian of L.J. was still in effect. It reasoned that guardianship continues even after an incapacitated ward marries and that L.J's purported revocation of her power of attorney did not terminate J.P.'s guardianship.

¶15 We agree with these conclusions. Section 72-5-324(1), MCA, lists the occurrences that will terminate a guardianship. Marriage is not included in this list. Section 72-5-324(1), MCA. As such, the marriage of an incapacitated ward will not automatically terminate the guardianship.

¶16 We also agree that L.J.'s purported revocation of her power of attorney did not affect the guardianship. As with marriage, neither revocation nor creation of a power of attorney appears on the list of occurrences that will terminate a guardianship. Section 72-5-324(1), MCA. Indeed, power of attorney and guardianship are different and may vest an agent or a guardian, respectively, with different powers and responsibilities. The creation or revocation of one does not affect the existence of the other. *See* § 72-31-308(2), MCA. Thus, even if L.J. was able to revoke her power of attorney, a matter which we do not need to decide, that action had no effect on J.P.'s guardianship.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our

5

Internal Operating Rules, which provides for nonciteable memorandum opinions. A record sufficient to enable this Court to rule upon the factual issues and matters of judicial discretion raised by the appellants was not provided to this Court. The legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶18 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE