DA 15-0565

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 133N

IN THE MATTER OF THE GUARDIANSHIP OF:

H.O.,

    A Protected Person.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DG-14-29
Honorable Robert L. Deschamps, III, Presiding Judge

District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DG-12-072C
Honorable Heidi Ulbricht, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Julie R. Sirrs, Boone Karlberg P.C., Missoula, Montana
        (*Attorney for John H. Osorio*)

        John Michael Myers, Myers Law, PLLC, Whitefish, Montana
        (*Attorney for Karlene A. Khor and Debra D. Thorson*)

    For Appellee:

        Fred Simpson, Reep, Bell, Laird, Simpson & Jasper, P.C., Missoula, Montana
        (*Attorney for Linda St. Peter*)

        Bill Hooks, Chief Public Defender, Eli Parker, Assistant Public Defender, Office of the Public Defender, Missoula, Montana
        (*Attorney for Protected Person H.O.*)

Submitted on Briefs:  April 13, 2016
Decided:  May 31, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 John Osorio, Karlene Khor, and Debra Thorson (collectively, "the siblings") appeal orders of the Fourth Judicial District Court, Missoula County, dissolving a temporary co-guardianship and co-conservatorship between Osorio and Linda St. Peter, appointing St. Peter as H.O.'s permanent full guardian and conservator, and denying Osorio's motion to order St. Peter to remit payments made by H.O.'s estate for her attorney fees. We address: (1) Whether the District Court abused its discretion in appointing St. Peter as H.O.'s permanent guardian and conservator; and (2) Whether the District Court abused its discretion in denying Osorio's motion to order St. Peter to remit payments made by H.O.'s estate for her attorney fees. We affirm.

¶3 H.O. is ninety-one years old and has dementia. He currently resides at Hunter's Glen, an assisted living facility in Missoula, Montana. St. Peter, Osorio, Khor, and Thorson are H.O.'s children. In 1999, H.O. executed a General Durable Power of Attorney, naming his wife, Betty, as his agent and St. Peter as his substitute agent should Betty cease to act due to her death, incapacity, or resignation. In the same document, H.O. named Betty as his guardian and conservator of his estate and St. Peter as substitute guardian and conservator should Betty cease to act due to her death, incapacity, or

2

resignation. In 2012, Betty was diagnosed with terminal cancer; she died in March 2013. In the spring of 2012, Betty asked H.O. and Betty's attorney, Richard DeJana, to draft an irrevocable trust naming St. Peter as trustee. The couple executed the trust in front of DeJana at their home. At the couple's request, DeJana also drafted a consent, which H.O. signed, appointing St. Peter as his guardian and conservator.

¶4 In November 2012, St. Peter petitioned the Eleventh Judicial District Court, Flathead County (Flathead County District Court), for appointment as H.O.'s guardian and conservator. Betty signed St. Peter's petition, thereby "consent[ing] to join [St. Peter] in asking the Court to appoint her as full Guardian and Conservator of the Estate of [H.O.] and that the appointment be for the remainder of his life." After St. Peter filed the petition, Betty and H.O. moved to Missoula.

¶5 In March 2013, the Flathead County District Court appointed St. Peter to temporarily serve as H.O.'s guardian and conservator. The siblings objected and cross-filed a petition to be appointed H.O.'s permanent guardian and conservator. In October 2013, after a hearing, the Flathead County District Court appointed Osorio to temporarily serve as H.O.'s co-guardian and co-conservator with St. Peter. In February 2014, venue transferred from the Flathead County District Court to the Fourth Judicial District Court, Missoula County. In March 2015, Osorio filed a motion to order St. Peter to remit payments made by H.O.'s estate for her attorney fees. The District Court held hearings on the petitions for appointment of H.O.'s guardian and conservator on June 29, August 21, and August 27, 2015. All parties appeared with their counsel, and H.O. appeared through his counsel.

3

¶6 On September 3, 2015, the District Court issued its findings of fact, conclusions of law, and order, dissolving the Flathead County District Court's temporary co-guardianship and co-conservatorship and appointing St. Peter as H.O.'s "permanent full guardian and conservator." On September 18, 2015, the District Court issued an order denying Osorio's motion to order St. Peter to remit payments made by H.O.'s estate for her attorney fees. The siblings jointly appeal these orders.

¶7 We review a district court's appointment of a guardian and conservator for a clear abuse of discretion. *In re Guardianship & Conservatorship of A.M.M.*, 2015 MT 250, ¶ 16, 380 Mont. 451, 356 P.3d 474. "A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *Cleveland v. Ward*, 2016 MT 10, ¶ 9, 382 Mont. 118, 364 P.3d 1250. We determine de novo whether a district court correctly interpreted and applied the relevant guardianship and conservatorship statutes. *In re J.A.L.*, 2014 MT 196, ¶ 7, 376 Mont. 18, 329 P.3d 1273.

¶8 We review a district court's findings of fact for clear error and conclusions of law for correctness. *A.M.M.*, ¶ 14. "A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a firm conviction that a mistake has been made." *A.M.M.*, ¶ 14 (quoting *Redies v. Cosner*, 2002 MT 86, ¶ 11, 309 Mont. 315, 48 P.3d 697). We review for abuse of discretion a district court's evidentiary rulings. *Cleveland*, ¶ 9.

¶9    *1. Whether the District Court abused its discretion in appointing St. Peter as H.O.'s permanent guardian and conservator.*

¶10   The siblings' contentions that the District Court abused its discretion in appointing St. Peter as H.O.'s guardian and conservator are summarized as follows: (1) the District Court incorrectly interpreted and applied the guardianship and conservatorship statutes regarding priority of appointment; (2) the District Court erred in finding that St. Peter did not breach her fiduciary duties to H.O.; and (3) the District Court abused its discretion in not considering certain evidence and did not properly weigh the evidence it did consider.

¶11   Priority of appointment of a guardian is determined pursuant to § 72-5-312, MCA; priority of appointment of a conservator is determined pursuant to § 72-5-410, MCA. Pursuant to § 72-5-312(2)(a), MCA, a competent person "nominated by the incapacitated person if the court specifically finds that at the time of the nomination the incapacitated person had the capacity to make a reasonably intelligent choice" has guardianship priority over other competent persons. However, this priority is "not binding, and the court shall select the person . . . that is best qualified and willing to serve." Section 75-5-312(3), MCA. Pursuant to § 72-5-410(1), MCA, the court may appoint, in the following order, a person as conservator of the estate of a protected person:

> (a) a conservator, guardian of property, or other like fiduciary appointed or recognized by the appropriate court . . . ;
> (b) an individual nominated by the protected person if the person is 14 years of age or older and has, in the opinion of the court, sufficient mental capacity to make an intelligent choice . . . .

However, "[t]he court, for good cause, may pass over a person having priority and appoint a person having less priority or no priority." Section 72-5-410(3), MCA.

5

¶12     After holding three separate hearings, in which it heard testimony from numerous witnesses, experts, and the parties themselves, the District Court concluded: "Apart from [Osorio]'s self-serving assertions, the evidence on this issue was one-sided and pointed solely to [St. Peter] as the person that [H.O.] and Betty wanted to serve as [H.O.]'s guardian and conservator when the need arose." The Court emphasized the "multiple estate planning documents demonstrating that [H.O.] and Betty reposed their trust in [St. Peter] to handle their affairs." St. Peter was named as the personal representative in H.O. and Betty's wills; as trustee of the irrevocable trust established by H.O.; as H.O.'s substitute agent, guardian, and conservator under H.O.'s Power of Attorney; and as H.O.'s guardian and conservator in the consent H.O. signed. The District Court found that, although there was some evidence that H.O. may have revoked his Power of Attorney on December 19, 2012, the purported revocation "was not effective" because: (1) it was not filed with the County Clerk; (2) H.O. never delivered the revocation to St. Peter; (3) the proceedings in this matter were filed, and St. Peter was H.O.'s lawfully-appointed and acting guardian and conservator, before St. Peter or the Court became aware of the alleged revocation; and (4) Adult Protective Services (APS) Regional Supervisor Janice Hinze administered a cognitive test of H.O. on December 28, 2012, on which he scored significantly below normal, so his capacity to knowingly revoke his Power of Attorney was "at best suspect."

¶13     In addition, at the June 19, 2015 hearing, H.O.'s attorney, Eli Parker, stated that H.O. supported St. Peter's petition because St. Peter had been caring for him "all along," and H.O. had no complaints regarding her care. DeJana testified that H.O. and Betty

6

clearly intended to name Linda as guardian, conservator, and trustee. According to DeJana, after the couple signed the trust and guardianship documents, Betty told him the couple did not want to make any changes to the documents, despite pressure from Osorio to include him. DeJana testified that Betty said she signed St. Peter's petition to be H.O.'s guardian and conservator because the siblings "were going to make life hell for [St. Peter]. And she wanted them to know that she approved of this and she was in line with doing it."

¶14 We have long held that we will not substitute our judgment for that of the trial court "regarding the credibility of witnesses and the weight of their testimony." *In re Seizure of $ 23,691.00 in U.S. Currency*, 273 Mont. 474, 485, 905 P.2d 148, 155 (1995) (citation omitted). This is because "[t]he weight of the evidence and the credibility of the witnesses are exclusively the province of the trier of fact and, in the event of conflicting evidence, it is within the province of the trier of fact to determine which will prevail." *In re Seizure*, 273 Mont. at 485, 905 P.2d at 155 (citation omitted). The District Court correctly applied Montana's guardianship and conservatorship statutes regarding priority of appointment because there is substantial record evidence that H.O. intended St. Peter to be his designated guardian and conservator. We decline to substitute our judgment for that of the District Court.

¶15 Similarly, we will not fault the District Court, as the siblings request, for finding that St. Peter's role in helping H.O. apply for Veteran's Administration benefits weighed in favor of her appointment as his guardian and conservator. *See Hallenberg v. Gen. Mills Operations, Inc.*, 2006 MT 191, ¶ 33, 333 Mont. 143, 141 P.3d 1216 ("[W]e will

7

not reweigh conflicting evidence or second guess the District Court's assessment of the credibility of the evidence.") (internal quotation marks and citation omitted). Moreover, the siblings have not alleged that the outcome would have been different had the Court not considered this factor to be in St. Peter's favor.

¶16 The siblings also contend that St. Peter breached her fiduciary duties to H.O. as his temporary guardian and conservator "by making hidden, unauthorized charges on her deceased mother's credit cards and paying for those with H.O.'s limited funds." Pursuant to § 72-38-804, MCA, "[a] trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." Further, "[i]n administering a trust, the trustee may incur only costs that are reasonable in relation to the trust property, the purposes of the trust, and the skills of the trustee." Section 72-38-805, MCA. The District Court found that "no evidence was adduced that [St. Peter] converted any of [H.O.]'s funds to her own use." On appeal, the siblings have not pointed to evidence that contradicts this finding. Moreover, during the August 21, 2015 hearing, Osorio admitted that St. Peter's use of the credit card under Betty's name "was revealed from the very beginning," and that he did not object to St. Peter's use of that card. In a separate case related to H.O.'s trust, the district court issued an order giving Osorio ten days to file objections to St. Peter's expenditures from the sale of H.O.'s home; Osorio never filed any objections.

¶17 "[T]he guiding principle to evaluate a guardian's actions should be whether they seek some benefit to the ward, or are in the ward's best interests." *J.A.L.*, ¶ 12. While a

8

large portion of the funds went to St. Peter's attorney fees, the District Court concluded that the costs St. Peter incurred were reasonable in relation to her duties as H.O.'s guardian and conservator. The Court stated: "not a penny of this would have been spent if [the siblings] had simply honored their father's wishes and let [St. Peter] do the job she was entrusted and appointed to do." The overwhelming evidence that H.O. intended St. Peter to be appointed his guardian and conservator supports the District Court's conclusion that St. Peter did not breach her fiduciary duties by expending H.O.'s funds to defend H.O.'s wishes.

¶18 The siblings also contend that St. Peter defied a court order when she allegedly "failed to inform [Osorio] she had incurred over $45,000, much less obtain his consent," and that she breached her duty as trustee, conservator, and an attorney to provide an accurate inventory and accounting. However, the siblings failed to produce any evidence on the issue of what is required for a conservatorship accounting, or what special duties an attorney has to administer a trust. The siblings' own expert, Pat Dougherty, testified that St. Peter was not required to seek Osorio's consent for expenditures she made from the trust. The District Court acknowledged that St. Peter's accounting may have been less than perfect but did not find a breach of her fiduciary duty. Rather, the District Court found that St. Peter acted at all times in H.O.'s best interests. These findings are supported by substantial record evidence: the siblings themselves made statements at trial indicating that H.O. and Betty desired St. Peter to be H.O.'s guardian and conservator and that she had done well in caring for Betty. Thorson agreed that Betty trusted St. Peter to care for H.O., and Osorio stated that St. Peter "did a great job with my mother."

¶19 Further, claims similar to those the siblings make on appeal were investigated by APS and determined to be unfounded. Shortly after H.O. and Betty moved to Hunter's Glen, APS received a referral to investigate allegations that H.O. was forcefully moved to Missoula, and that St. Peter took $30,000 from the couple's account. Hinze investigated the allegations by visiting the couple at their apartment. At the June 29, 2015 hearing, Hinze testified that H.O. told her he liked living at Hunter's Glen and did not feel pressured to move or stay there against his will. Betty told Hinze she wanted St. Peter to handle the couple's affairs. Betty also indicated that Osorio wasn't interested in the couple's welfare, and that Khor had been abusing Betty for years. Hinze testified that the couple decided not to give their contact information to the siblings, and that St. Peter was not preventing the couple from communicating with the siblings. After meeting with the couple, it was Hinze's belief that H.O. "did concur with having [St. Peter] as guardian and conservator." In January 2013, Hinze conducted a follow-up visit with the couple and concluded that allegations that St. Peter was mistreating H.O. were unfounded. Hinze also emailed the State Ombudsman for Hunter's Glen, writing that she "found no abuse, neglect or exploitation in this case."

¶20 Finally, the siblings contend that the District Court erred in excluding evidence of a transcript from an unrelated proceeding in Florida and failed to consider portions of the Flathead County District Court record. Pursuant to M. R. Evid. 103(a), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." The siblings offer no explanation of how the exclusion of the Florida transcript affected their rights in this case, apart from a blanket statement that

10

their substantial rights were affected. Similarly, the siblings offer no explanation of how the District Court's decision to not conduct a more in-depth review of the Flathead County District Court record affected their substantial rights. The District Court's statements indicate that it reviewed and considered the transcripts from the Flathead County District Court hearings and concluded that the additional testimony was cumulative and not necessary for a proper consideration of the issues. Moreover, the Flathead County District Court's appointment of Osorio as co-guardian and co-conservator was temporary; the District Court did not reverse that appointment, but merely dissolved it after the six-month term was over. "District courts have broad discretion to control the admission of evidence at trial," *Cleveland*, ¶ 9, and we cannot conclude that the District Court acted arbitrarily without conscientious judgment or exceeded the bounds of reason in making these evidentiary decisions. Nor can we conclude, given the substantial record evidence supporting the District Court's decision to appoint St. Peter as H.O.'s guardian and conservator, that the District Court's decision not to consider this evidence affected the siblings' substantial rights.

¶21 Contrary to the siblings' contentions, the District Court did consider alternatives to St. Peter. The Court found that none of the siblings were suitable based on factors including their locations of residence, schedules, credibility as witnesses, history of disinterest with H.O.'s affairs, and witness testimony regarding H.O. and Betty's intent. Apart from H.O.'s alleged revocation of his power of attorney, the siblings point to no evidence that H.O. wanted anyone but St. Peter to be his guardian and conservator. In their Reply Brief, the siblings allege that H.O. indicated to his attorney that he had no

11

preference for who would serve as his guardian and conservator, and that H.O. implied Khor should be his guardian because she takes him to doctor's appointments. The cited record does not support the siblings' allegations. At the June 29, 2015 hearing, H.O.'s attorney related that H.O. did not want his children to fight over who would be his guardian or conservator but, if he had to choose, it would be St. Peter. Put in context in the hearing transcript, H.O.'s statement that Khor helps him get to doctors' appointments does not in any way infer that H.O. wanted Khor to be his legal guardian and conservator. Given the overwhelming evidence that H.O. desired St. Peter to be his only guardian and conservator, we cannot conclude that the District Court abused its discretion in appointing St. Peter to that position.

¶22 *2. Whether the District Court abused its discretion in denying Osorio's motion to order St. Peter to pay attorney fees.*

¶23 As the siblings recognize, Montana law allows a guardian or conservator to pay for her attorney fees from the protected person's estate, provided such fees are "reasonably necessary for the support, education, care, or benefit of the protected person." Section 72-5-428(1)(b), MCA. Under Montana's conservatorship statutes, "'trial courts and conservators are granted broad discretionary powers' in estate administration." *A.M.M.*, ¶ 17 (quoting *Redies*, ¶ 20). As discussed in our resolution of Issue 1, substantial evidence supports the District Court's conclusion that St. Peter did not breach her fiduciary duty to H.O. by using funds from the trust to pay for her attorney fees. Moreover, during the August 27, 2015 hearing, Dougherty testified that it was St. Peter's "obligation as a fiduciary" to defend her appointment to the fiduciary role. The

12

District Court did not abuse its discretion in denying Osorio's motion to order St. Peter to remit her attorney fees to H.O.'s estate.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were correct, its findings of fact are not clearly erroneous, and its rulings were not an abuse of discretion. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

13