# Supreme Court of Texas

No. 23-0463

In the Matter of the Marriage of Carlos Y. Benavides, Jr. and
Leticia R. Benavides

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

CHIEF JUSTICE BLACKLOCK, joined by Justice Devine and Justice Sullivan, concurring.

"The [marriage] relation itself is natural; the prescribed impediments and the forms of laws for its legal consummation are artificial, being the work of government." *Lewis v. Ames*, 44 Tex. 319, 341 (1875). The nature of marriage is such that it:

> cannot be created except by the consent of the parties. It cannot be dissolved except by the consent and the intelligent exercise of the will of one of the parties. That is to say, that no matter what or how many valid grounds for divorce exist, it is only by the decision and will of the party aggrieved that an action for divorce may be brought.

*Shenk v. Shenk*, 135 N.E.2d 436, 438 (Ohio Ct. App. 1954).

The parties disagree on whether a guardian may obtain a divorce on behalf of a ward who lacks the capacity to intelligently seek an end to his marriage. The Court prudently declines to definitively answer that question because answering it turns out to be unnecessary to the

disposition of this case. I do not object to the Court's silence, and I join the Court's opinion and judgment in full. I write separately with the following observations for consideration in future cases.

The traditional view, well-articulated in the Ohio case quoted above, is that an "exercise of the will" is an essential element of both marriage and divorce. It follows from this traditional view that a guardian cannot obtain a divorce on behalf of a ward who cannot intelligently exercise his will to divorce. As the Court observes, some jurisdictions continue to hold the traditional view, while others have abandoned or modified it by authorizing guardians to obtain divorces on behalf of incompetent wards to varying degrees. *Ante* at 18–23. The Court does not articulate Texas law's answer to the question. Neither does the Family Code. That does not mean there is no answer, although I agree that this Court's articulation of the answer should await a case in which the answer is necessary to the judgment.

The question is whether the law should—or even can—separate marriage and divorce from their essentially volitional nature by authorizing divorces even when neither party has personally, willfully sought a divorce. The traditional common-law view—the near-universal view until recent decades—says no. The basic moral and legal judgment from which the traditional view proceeds is that marriage and divorce are, in their nature, expressions of the will of the husband and wife and therefore cannot come about, either naturally or legally, absent a manifestation of that will. The judges who developed and preserved this view over the centuries were not merely making a *legal* judgment about the legal construct of marriage. They were making a *moral* judgment

2

about the nature of an ancient and enduring fact about our civilization, a fact the law did not create and upon which the law merely purports to act around the edges.  That fact is marriage.

Marriage pre-dates and transcends our law (and will post-date our law, I expect).  Marriage is a unique, natural relationship *reflected* in the law and *recognized* by the law, but it was not *created* by the law.  If marriage is a natural fact upon which the law acts, then judges and lawmakers must make judgments about the nature of marriage in the course of determining how the law will act upon it.  Just as a judge must know what property is in order to say how a person's ownership of it can be ended, a judge must know what marriage is in order to say how a person's participation in it can be ended.

This kind of thinking inevitably entails a degree of moral judgment.  We should not hide from that or try to conceal it.  When the law delves into intimate moral questions like marriage, divorce, and family life, moral judgments are being made, whether we acknowledge it or not—both by judges and by legislators.  A judge who thinks of marriage as a civil legal status created by and governed by the Family Code may not bat an eye at the notion that a guardian can seek divorce for an incompetent ward, just as a guardian may do many other important things for a ward.  But a judge who thinks of marriage as a natural expression of the will of a man and a woman, which exists apart from and transcends our law's codification of it, is far more likely to gravitate toward the traditional view, as did an unbroken line of judges of generations past.

Judges of previous generations did not hesitate to adopt the traditional view, the truth of which seems to have been obvious to them. They developed, over the years, a longstanding rule that continues to prevail in many American jurisdictions. That traditional rule converts a moral judgment into a legal judgment, as judges so often do, whether or not we admit it. "Under the traditional rule, courts do not read statutes granting guardians general powers to act on behalf of the ward as authorizing divorce actions because the decision to divorce is too personal and volitional to be pursued at the pleasure or discretion of a guardian." *Flory v. Flory*, 527 P.3d 250, 252 (Wyo. 2023) (quotations omitted).[1] The legal judgment is that courts will not read statutes

---

[1] *See also, e.g.*, *Samis v. Samis*, 22 A.3d 444, 450 (Vt. 2011) ("Like the majority of jurisdictions around the country, we continue to conclude that the right to end a marriage through divorce is volitional and personal such that the Legislature did not intend, through a general grant of authority, to permit it to be carried out by a guardian."); *In re Marriage of Denowh ex rel. Deck*, 78 P.3d 63, 66 (Mont. 2003) ("[W]e conclude that it would be inappropriate for the guardian of an incapacitated person to have the power to bring or maintain a dissolution proceeding on behalf of his or her ward."); *Murray ex rel. Murray v. Murray*, 426 S.E.2d 781, 784 (S.C. 1993) ("We adopt the majority rule in the case of a spouse who is mentally incompetent as to his property *and* his person, and hold that he may not bring an action for divorce either on his own behalf or through a guardian."); *State ex rel. Quear v. Madison Cir. Ct.*, 99 N.E.2d 254, 257 (Ind. 1951) ("Since neither the statutes defining the powers of guardians nor the statutes on divorce authorize a guardian to prosecute an action for divorce, whether absolute or limited, the trial court had no jurisdiction to entertain the action in this case."); *Scott v. Scott*, 45 So.2d 878, 879 (Fla. 1950) ("[I]n the absence of a statute specifically authorizing suit for divorce by a guardian on behalf of an insane ward the right to maintain the suit is of such a strictly personal and volitional nature that it must, of necessity, remain personal to the spouse aggrieved by the acts and conduct of the other."); *Phillips v. Phillips*, 45 S.E.2d 621, 623 (Ga. 1947) ("There is no statute in this State especially authorizing a guardian to maintain such a suit, and under the general law as to insanity and guardianship, we do not think that a guardian

4

granting general powers to a guardian to authorize the divorce of a ward. The moral judgment, which is the justification for the legal judgment, is that divorce is "too personal and volitional to be pursued at the pleasure or discretion of a guardian." *Id.* (quotations omitted).

When modern courts abandon the traditional rule, they do not abandon the realm of moral judgment. Confronted with their predecessors' moral judgment that marriage and divorce are "too personal and volitional" to be pursued by proxy, they have responded with their own moral judgment—that marriage and divorce are *not* "too personal and volitional" to be pursued by proxy. There is no escaping the moral content of the judgment. What changed in the second half of the twentieth century as many courts moved away from the traditional rule was not that judges moved away from making moral judgments about marriage and divorce. The change was in the content of the judges' moral judgments.[2]

can be considered as the keeper or protector of his ward's conscience in regard to such matter."); *Mohrmann v. Kob*, 51 N.E.2d 921, 925 (N.Y. 1943) ("Until th[e Legislature] has enacted a statute which expressly or by clear implication authorizes a committee of an insane person to [seek a dissolution of the ward's marriage], the courts may not assume to grant that power."); *Birdzell v. Birdzell*, 6 P. 561, 562 (Kan. 1885) ("Whether a party who is entitled to a divorce shall commence proceedings to procure the same or not is a personal matter resting solely with the injured party, and it requires an intelligent election on the part of such party to commence the proceedings, and such an election cannot be had from an insane person.").

[2] Of course, if a legislature specifically codifies the power of guardians to obtain divorces for incompetent wards, then the legislators, not the judges, have made the relevant moral judgment, and the judges are likely bound to follow it. Yet in most of the states that have trended in the direction of allowing guardians and judges to decide whether a ward should divorce, it is the judges, not the legislators, who have driven the change. *See, e.g.*, *Karbin v. Karbin ex*

* * *

For many people, marriage is primarily a spiritual matter, not merely a legal one.[3]  Quite obviously, courts are not well suited to judge the spiritual benefits of marriage or divorce on behalf of an incompetent person.  And for everyone, regardless of religion, marriage is a uniquely *personal* matter.  This is why the traditional rule holds that the decision to begin or end a marriage must be made by the individual people involved in this most intimate of human relationships, not by third parties like guardians and judges.

Texas appears largely to have followed the traditional rule for most of our history.[4]  Then, in 1988, this Court in *Wahlenmaier v.*

---

*rel. Hibler*, 977 N.E.2d 154, 162 (Ill. 2012) ("With the concept of 'injury' removed from divorce in Illinois, it is difficult for us to accept the view that the decision to divorce is qualitatively different from any other deeply personal decision, such as the decision to refuse life-support treatment or the decision to undergo involuntary sterilization."); *In re Marriage of Gannon*, 702 P.2d 465, 467 (Wash. 1985) (en banc) ("[I]n these days of termination of life support, tax consequences of virtually all economic decisions, no-fault dissolutions and the other vagaries of a vastly changing society, we think an absolute rule denying authority [for guardians to seek divorce] is not justified nor in the public interest."); *Ruvalcaba ex rel. Stubblefield v. Ruvalcaba*, 850 P.2d 674, 681 (Ariz. Ct. App. 1993) ("We are persuaded by the reasoning of more recent cases that a guardian may maintain an action for dissolution of marriage on behalf of an incompetent adult ward.").

[3] *See Genesis* 2:24 ("Therefore a man shall leave his father and his mother and hold fast to his wife, and they shall become one flesh.").

[4] *See Hart v. Hart*, 705 S.W.2d 332, 333 (Tex. App.—Austin 1986, writ ref'd n.r.e) ("The act of dissolving the marital relationship, therefore, lies exclusively within the discretion of the parties to the marriage and may not be exercised by a next friend or guardian of a mentally incompetent spouse."); *Dillion v. Dillion*, 274 S.W. 217, 220 (Tex. App.—Amarillo 1925, no writ) ("Our conclusion upon this branch of the case is in accordance with the uniform holding in other jurisdictions—that the [insane] plaintiff cannot maintain an

*Wahlenmaier* stated—without elaboration or analysis—"that a guardian ad litem or next friend can exercise the right of a mentally ill person to obtain a divorce." 762 S.W.2d 575, 575 (Tex. 1988) (per curiam). *Wahlenmaier* does not grapple at all with the deep moral and jurisprudential foundations of the traditional rule with which it is in tension. The Court does not engage with those questions again today, nor need it have done so.

As the Court recognizes, if the answer ends up being that a divorce may be obtained by a guardian on a ward's behalf, then the fate of the ward's marriage turns ultimately on a best-interest determination by a judge, not on an expression of the ward's desire to end the marriage. But it seems to me that whether a person will become married or will remain married are questions that are, in their very nature, impervious to a third-party's best-interest analysis. In other words, whether I want to be married and whether somebody thinks I should be married are two completely different questions, and only the former has any bearing on the question of whether I am or will remain married. If an essential element of both marriage and divorce is the freely given expression of the human will, then when nature renders it impossible for that will to be expressed, neither a judicial best-interest analysis nor anything else can replace it. The thing can no longer be done. If we pretend otherwise, we are changing the nature of the thing.

---

action for divorce, either in her own name or by next friend."); *Skeen v. Skeen*, 190 S.W. 1118, 1119 (Tex. App.—Dallas 1916, no writ) (interpreting a statute prohibiting granting a divorce when either the husband or wife is insane to also prohibit granting a divorce when a next friend intervenes to prosecute a pending suit for divorce on behalf of an insane friend).

I am inclined to think that only the individual person can answer, for himself, whether he should be married. If he becomes incapable of answering the question, there is nobody else to ask. The question can no longer be answered. The courts, when properly called upon, can do our best to help manage the affairs of all involved in such a difficult circumstance with prudence and compassion. But we should not presume to answer a question that is not ours to answer. That has been the traditional, majority view of these matters throughout American legal history. I find it to be a compelling view, one which the Court may have occasion to adopt in a future case.

* * *

As the Court observes, the "recent and growing trend among American courts" is against the traditional view. *Ante* at 21. On this and other matters, if I must choose between the accumulated wisdom of the ages and the "recent and growing trend among American courts," I expect the choice will be easy.

I respectfully concur.

James D. Blacklock
Chief Justice

**OPINION FILED:** April 25, 2025

8